**PAULEY PETROLEUM, INC., a corporation of the State of Delaware, Pauley Pan American Petroleum Company, a corporation of the State of Delaware, and American Independent Oil Company De Mexico, S. A. de C. V., a corporation of the Republic of Mexico, Plaintiffs Below, Appellants,**

v.

**CONTINENTAL OIL COMPANY, a corporation of the State of Delaware, and Mexofina, S. A. de C. V., a corporation of the Republic of Mexico, Defendants Below, Appellees.**

Supreme Court of Delaware.

Oct. 6, 1967.

Reargument Denied Nov. 3, 1967.

285

H. Albert Young, H. James Conaway, Jr., and Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, and Orris R. Hedges, Los Angeles, Cal., for plaintiffs below, appellants.

James M. Tunnell, Jr., Andrew B. Kirkpatrick, Jr., and William S. Megonigal, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for Mexofina, S. A. de C. V., appearing specially and not generally.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This is an appeal from an Order of the Superior Court quashing a writ of foreign attachment. The determinative question involves the correctness of the interpretation by the Court below of Superior Court Civil Rules 4(c) and 5(aa) (2), Del.C.Ann., as they existed on January 31, 1967 when the writ was issued.

## I.

The question presented requires tracing the evolution of certain changes in the subject Rules.

Prior to 1957, Rule 4(c) consisted of a main paragraph, dealing with the contents of writs generally, and three sub-paragraphs: one dealing with the writ of summons, the second with the writ of attachment, and the third with the writ of capias.[1] By amendment effective April 12, 1957, duly promulgated and issued to the members of the Bar, Rule 4(c) was amended "by striking out the said Rule as it now appears and by substituting in lieu thereof" a revision of the main paragraph of the Rule, omitting reference to any of the sub-paragraphs.[2] In that truncated form, Rule 4(c) appeared in the pocket parts of 13 Del.C. for almost a decade when this action was filed in January 1967.

1. Prior to its 1957 amendment, Rule 4(c) provided:
   "(c) Contents of Writ: Generally. The process shall bear the date of its issuance, be signed by the Prothonotary, be under the seal of the Court, contain the name of the Court and the names of the parties, state the name of the official or other person to whom it is directed, the name and address of the plaintiff's attorney, if any, otherwise the plaintiff's address, and the time within which these rules require the defendant to appear and defend, and shall notify him that in case of his failure to do so, judgment by default will be rendered against him for the relief demanded in the complaint. When an affidavit of demand is filed with the complaint under Rule 3(b), the process shall also notify the defendant that unless an affidavit of defense, in conformity with the statute, shall be served by the defendant not later than the time for service of the answer, judgment by default will be rendered against him for the amount specified in the affidavit of demand.
   "(1) Summons. The writ of summons shall be directed to the defendant.
   "(2) Attachment. The writ of attachment shall be directed to the person serving the writ and command him to attach the defendant by all his real and personal property in the county to which the writ is issued and to summon defendant's garnishees to appear within 20 days after service of the writ to answer or plead and shall notify them that, on failure to do so, they may be compelled by attachment.
   "(3) Capias ad Respondendum. The writ of capias shall be directed to the person serving the writ and command him to arrest the defendant and produce him in court on or before the return day of the writ."

2. The 1957 amendment appeared as follows:
   "Civil Rule 4(c) is amended by striking out the said Rule as it now appears and

Rule 5(aa) (2), dealing with the appearance of a garnishee and subsequent litigation between plaintiff and garnishee, was substantially overhauled in 1961 to consist of a paragraph of 5 sentences.[3] By amendment of November 2, 1966, duly promulgated and issued to the members of the Bar, Rule 5(aa) (2) was "amended to read as follows" and thereafter appeared a revision of the last sentence only. This was the only form of the amended Rule available to members of the Bar when this action was filed in January 1967.[4]

## II.

With the Rules as thus amended in hand, counsel for the plaintiffs obtained the issuance of foreign attachment process under the following circumstances:

The suit is against Continental Oil Company, a Delaware corporation, (hereinafter

by substituting in lieu thereof the following:

"(c) CONTENTS OF WRIT: GENERALLY. The process shall bear the date of its issuance, be signed by the Prothonotary or one of his Chief Deputies, be under the seal of the Court, contain the name of the Court and the names of the parties, state the name of the official or other person to whom it is directed, the name and address of the plaintiff's attorney, if any, otherwise the plaintiff's address, and the time within which these rules require the defendant to appear and defend, and shall notify him that in case of his failure to do so, judgment by default will be rendered against him for the relief demanded in the complaint. When an affidavit of demand is filed with the complaint under Rule 3(b), the process shall also notify the defendant that unless an affidavit of defense, in conformity with the statute, shall be served by the defendant not later than the time for service of the answer, judgment by default will be rendered against him for the amount specified in the affidavit of demand."

3. Prior to its 1966 amendment, Rule 5 (aa) (2) appeared as follows:

"(aa) (2) Appearance of Garnishee; When; How Made. Any garnishee duly summoned (either on mesne writ of attachment or execution process) shall serve upon plaintiff a verified answer within twenty days after service of process, which shall specify what goods, chattels, rights, credits, money or effects of a defendant, if any, he has in his possession or custody. Within ten days after service of such answer, plaintiff may serve exceptions thereto, and the proceedings on the issues thus raised shall be had as in actions commenced by summons. If no exceptions are filed by plaintiff to garnishee's answer within the ten day period as aforesaid, a delivery to the Sheriff of the property set forth in the answer by the garnishee, or so much of it as shall satisfy plaintiff's demand, shall be a complete discharge of the garnishee in the proceedings, and the Sheriff shall make a suitable supplemental return on the writ showing the property which has been delivered to him by the garnishee, and shall hold such property subject to the order of the Court. Unless the garnishee delivers such property to the Sheriff within five days after the expiration of the ten day period for plaintiff's exceptions, if any, the Sheriff shall on order of the Court physically seize any property subject to seizure, and with respect to any property set forth in the answer which is not seized or delivered to the Sheriff, the plaintiff on motion may have personal judgment entered against garnishee in favor of plaintiff in an amount equal to the value of the property of defendant in garnishee's custody or possession, or the amount of the plaintiff's judgment, whichever is less, with interest and costs. Before the Sheriff shall serve any writ of attachment, he shall receive from the plaintiff the sum of $20.00 for each party to be summonsed as garnishee (except as to garnishment governed by the terms of 10 Del.C. § 4913) and said sum shall be delivered to each garnishee when the summons is served; the return on the writ of garnishment will show the garnishee fee paid, which will be taxed as costs in the case; no garnishee will be required to answer without first having received the garnishee fee as aforesaid."

4. By Orders dated June 5, 1967, probably by reason of this litigation, the Superior Court issued a clarification of both Rules here involved by expressly limiting the Rule 4(c) amendment of 1957 to the first paragraph thereof and the Rule 5 (aa) (2) amendment of 1966 to the last sentence thereof.

"Continental") and its allegedly wholly-owned subsidiary, Mexofina, S. A. de C. V., a corporation of Mexico, (hereinafter "Mexofina"). The plaintiffs allege a cause of action based upon Continental's guaranty of Mexofina's obligation to the plaintiffs. Personal service was obtained upon Continental's resident agent in Delaware. The action against Mexofina was commenced by foreign attachment process whereunder the plaintiffs seek to attach in the hands of Continental a portion of an indebtedness allegedly owned by Continental to Mexofina.

The process issued in the form of two Orders of the Superior Court, dated January 31, 1967: After reciting that it appeared to the Court that this is an appropriate case for the issuance of a writ of foreign attachment against the foreign corporate defendant, the first Order directed that the Prothonotary issue a writ of foreign attachment to the Sheriff of New Castle County after requiring the specified bond; that the Sheriff attach $1,000,000. of a debt of approximately $8,000,000. allegedly owed by Continental to Mexofina; and that the Prothonotary make the usual newspaper publication. The writ as issued contained no summons to garnishees as required by Rule 4(c) (2). The second Order, obviously drawn under Superior Court Civil Rule 4(b) (6),[5] recited that it appeared to the Court that the property of Mexofina to be seized is not susceptible to physical seizure within this State, and that

Continental is the corporation having possession, custody and control of the transfer of the property to be seized. The Order then directed that Continental retain the property and recognize no transfer or diminution thereof until further Order of the Court; that Continental make notation on its records that the property was being held pursuant to the attachment and Order of the Court; and that, within ten days after the service of the writ, Continental file a certificate under oath with the Prothonotary specifying the property of Mexofina of which it has possession, custody or control, or control of transfer, and specifying further the nature of Mexofina's title or interest and the identity of any other party having an interest, legal or beneficial, in the property.

Continental appeared, answered the complaint, and responded to the Rule 4(b) (6) Order. Mexofina entered a special appearance and moved to quash the foreign attachment process. Upon the grant of that motion, the plaintiffs appeal.

### III.

The Court below held that the plaintiffs were governed by Rule 4(c) (2) in January 1967, the amendment of 1957 notwithstanding; that the main body of Rule 5 (aa) (2) was in force and effect in January 1967, the amendment of November 1966 notwithstanding. This conclusion was

5. Rule 4(b) (6) provides:
"(6) Except in cases of garnishment, if it appears from the description of the property to be seized that it is not susceptible of physical seizure within the state, the plaintiff shall upon institution of suit obtain from the Court an order, a certified copy of which shall be served with the writ, upon the person, persons or corporation having possession or custody of the property or control of its transfer, directing such person, persons or corporation to:
"(A) retain the property and recognize no transfer thereof until further order of the Court;
"(B) forthwith make a notation upon any records pertaining to the property

that such property is held pursuant to the order of the Court; and
"(C) within ten days after the date of such service, file a certificate under oath with the Prothonotary, specifying:
"(I) such defendant's property, if any, of which it has possession, custody or control, or control of its transfer;
"(II) whether the title or interest of each such defendant is legal or beneficial; and
"(III) if legal, the name and address of the holder of any equitable or beneficial title or interest therein, if known, and, if beneficial, the name and address of the holder of the legal title thereto, if known."

based upon a determination of the intent of the Superior Court in the promulgation of those amendments.

■ We do not differ with the conclusion of the Court below as to the intent undoubtedly underlying the amendments— witness the clarifying Orders of June 1967. Our difficulty with the conclusion below is in the area threshold to any consideration of the intent of the promulgators of the amendments. As issued to the members of the Bar, the Rule 4(c) amendment of 1957 and the Rule 5(aa) (2) amendment of 1966 were, in our opinion, clear and unambiguous. On the face of each amendment, intended or not, was the clear and unambiguous statement that the amendments superseded the earlier versions of the Rules involved, thereby eliminating Rule 4(c) (2) and the main body of Rule 5(aa) (2). In the absence of ambiguity, there was no room for construction or ascertainment of intent. Beck v. Lund's Fisheries, Inc., 3 Storey 45, 164 A.2d 583, 586 (1960). We think that the members of the Bar were entitled to accept the amendments at their face values and to act upon them as they were issued by the Superior Court. There was no obligation on the part of counsel to determine whether the plain statements of the amendments were actually intended. Compare Empire Box Corporation v. Jefferson Island Salt Mining Co., 3 Terry 258, 31 A.2d 240 (1943).

■ We hold, therefore, that counsel for the plaintiffs and the Court issuing the Orders of January 31, 1967 rightly considered that Rule 4(c) (2) had been rescinded and that Rule 5(aa) (2) had been reduced to its last sentence. It follows, in our opinion, that the Court below erred in holding that the foreign attachment writ was fatally defective in that it lacked the summons and notification to garnishee prescribed by Rule 4(c) (2).

IV.

Mexofina contends, however, that even if the amendments of 1957 and 1966 had the effect we here decide, there was still the requirement that the writ contain a summons to the garnishee, by virtue of 10 Del. C. § 3510 prior to its repeal in 1960.[6] This contention requires a brief consideration of the 1960 revision of 10 Del.C. Chap. 35 dealing with attachments generally.

The new § 3508 provides:

"Goods, chattels, rights, credits, monies, effects, lands and tenements may be attached under the provisions of this Chapter."

The new § 3512 provides:

"The Superior Court may make all necessary rules respecting the form of process, the manner of issuance and return thereof, modes of proof, manner of seizure of property, sale of perishable property, appointment and duties of auditors, the release of property from attachment and the sale of property so seized, and all other matters relating to attachment proceedings, and may require the plaintiff to give approved security to indemnify the defendant for his costs, losses and damages resulting from the attachment."

As part of the general rewriting of Chapter 35, the following provision was made: (52 Del.L. Ch. 341, p. 809)

6. Prior to 1960, 10 Del.C. § 3510 provided:

"§ 3510. Contents of writ; property subject to attachment

"The writ of attachment, whether domestic or foreign, shall be directed as other writs are, and shall command the officer to attach the defendant by all his goods and chattels, rights and credits, lands and tenements, in whose hands, or possession, soever, the same may be found in his bailiwick, so that he be and appear at the next Superior Court to answer the plaintiff's demand; and that he summon the defendant's garnishees to appear at the Superior Court to declare what goods, chattels, rights, credits, money, or effects of the defendant, they have in their hands respectively."

" * * * Until the Superior Court promulgates rules governing the procedure on attachment, the provisions in force immediately prior to the effective date of this Act shall continue to apply."

Upon the latter provision, Mexofina builds the argument that if there was a void in our Rules providing procedures for foreign attachment and garnishment, by reason of the elimination of Rule 4(c) (2) and the main body of Rule 5(aa) (2), that void was filled by the surviving provisions of the old § 3510 requiring that the writ of attachment contain a summons to garnishees. We find this argument unacceptable because Rule 4(b) (6), promulgated almost simultaneously with the 1960 revision of Chapter 35, constituted a procedure, for the purposes of this case, that filled whatever procedural gap may have been created by the elimination of Rule 4 (c) (2) and the main body of Rule 5(aa) (2).

It seems clear that Rule 4(b) (6) provides a procedure for a special kind of garnishment, particularly designed for property not susceptible of physical seizure. The first part of the Rule 4(b) (6) procedure calls for service upon the garnishee of a writ of attachment, together with a certified copy of an Order of the Court directing the garnishee to retain, subject to the further Order of the Court, any property of the defendant in its possession, custody or control. This, we think, is a plain and readily understandable direction to the garnishee as to the Court's expectation of it at the outset—a desirable element of clear judicial warning lacking in degree in the summons procedure prescribed by Rule 4 (c) (2) or the old § 3510. Under the second part of the Rule 4(b) (6) procedure, it is required that the Court Order thus served on the garnishee also direct that, within ten days after such service, the garnishee shall file a certificate under oath

with the Prothonotary specifying the property of the defendant, if any, within the garnishee's possession, custody, or control, and the nature of the defendant's title. We think that the Order under Rule 4(b) (6), requiring the filing by the garnishee with the Prothonotary of such sworn certificate, is equivalent to the summons under Rule 4(c) (2) ; and we think that the filing of the sworn certificate under Rule 4(b) (6) is equivalent to the "appearance" and the filing of a "verified answer" under Rule 5(aa) (2).

■ Thus, for the purposes of this case, we find in Rule 4(b) (6) the necessary elements for notice to, summons of, and answer by the garnishee, sufficient to constitute an adequate procedure for garnishment process in aid of the mesne writ of foreign attachment. We conclude, therefore, that the old § 3510 does not govern in this case for want of a procedural Rule.

Finally, Mexofina argues that Rule 4(b) (6) is not applicable in this case for two reasons :

■ First, it is argued that Rule 4(b) (6) was intended to apply exclusively to the attachment of corporate stock, akin to sequestration in equity, and was not applicable to a debt owed by a third party subject to a conventional garnishment. The Court below agreed. We are unable to do so. There is nothing on the face of Rule 4(b) (6) to support such restricted view of its scope and function; indeed, the general and unqualified language of the Rule is to the contrary. Furthermore, 8 Del.C. § 324 provides a detailed procedure for attachment of stock; and we see no valid reason to conclude that, by Rule 4(b) (6), the Superior Court was attempting to supplement § 324. Moreover, Rule 4(b) (6) was obviously patterned upon Chancery Rule 4(dd) (3) Del.C.Ann.,[7] dealing with seques-

---

7. Chancery Rule 4(dd) (3) provides:
"(3) After the filing of such bond or bonds as may be required by the order, but not later than 10 days after the date

of the order of seizure, the sequestrator shall serve a certified copy of the order upon the person, persons or corporation having possession or custody of the prop-

tration. Analagous to foreign attachment at law, Trans World Airlines, Inc. v. Hughes Tool Co., 41 Del.Ch. 11, 187 A.2d 350 (1962), sequestration is not limited to stock seizures but embraces the class of property the plaintiffs here seek to attach. Weinress v. Bland, 31 Del.Ch. 269, 71 A.2d 59 (1950). For these reasons, we find untenable the position that Rule 4(b) (6) applies to stock attachments only.

■ More difficulty is presented by Mexofina's second reason for the contention that Rule 4(b) (6) is inapplicable. Our attention is focused upon the prefatory words of the Rule: "Except in cases of garnishment * * *." Since, as we have concluded, Rule 4(b) (6) itself provides for a type of garnishment, it is difficult to fit the introductory words into the context literally. A garnishment is the attachment of a defendant's property in the hands of a third party. Clearly, in the context of Rule 4 as a whole, Rule 4(b) (6) provides for that type of process for intangible property. Thus, if accorded a literal and unqualified meaning, the prefatory langauge would nullify the Rule.

■■ It is our duty to accord to the introductory words of Rule 4(b) (6) a meaning consonant with good sense and reason. If reasonably possible, the language must be read in such manner as to give the Rule force and effect. To that end, we have concluded that the introductory phrase refers to the type of garnishment proceedings that involves a summons directing the entry of

an ordinary appearance and adversary proceedings between plaintiff and garnishee, in which the Sheriff may become involved under Rule 5(aa) (2). The latter concept of garnishment is clearly at variance with and distinguishable from the concept of Rule 4(b) (6). Our interpretation gives meaning and purpose to Rule 4(b) (6) and permits the operation of the Rule for the special type of garnishment for which we think it was conceived.

■ Accordingly, we conclude that Rule 4(b) (6) is applicable in the instant case; that counsel and the Court issuing the writ and the two Orders of January 31, 1967, correctly followed Rule 4(b) (6); that the foreign attachment and garnishment processes issued thereunder are valid and effective; and that, therefore, it was error to quash the writ of foreign attachment for the absence therefrom of a "summons" in the sense that word is used in connection with Rules 4(c) (2) and 5(aa) (2).

In view of the foregoing conclusions, we do not reach the other grounds of the appeal.

The Order below must be reversed.

## ON PETITION FOR REARGUMENT

Mexofina's Petition for Reargument is denied, with the following comments as to certain points raised therein:

Mexofina argues that the editorial treatment by asterisks in the pocket parts of 13

---

erty or control of its transfer, and shall seize the property. The sequestrator shall seize property which is, or appears, not to be susceptible of physical seizure within the state by serving a direction in writing that the person, persons or corporation having possession or custody of the property or control of its transfer, shall:

"(a) retain the property and recognize no transfer thereof until further notice from the sequestrator or order of the Court;

"(b) forthwith make a notation upon any records pertaining to the property

that such property is held pursuant to the order of the Court; and

"(c) within ten days after the date of such service, deliver a certificate under oath to the sequestrator, specifying (i) such defendant's property, if any, of which it has possession, custody or control or control of its transfer; (ii) whether the title or interest of each such defendant is legal or beneficial; and (iii) if legal, the name and address of the holder of any equitable title or interest therein, if known, and, if beneficial, the name and address of the holder of the legal title thereto, if known."

Del.C. indicates clearly that no truncation of Rule 4(c) was intended. Under the circumstances, we think it more reasonable to conclude that the asterisks denote omission of Rules 4(d) and 4(e) rather than subparagraphs (1), (2) and (3) of Rule 4(c).

Mexofina argues that the conclusion we reach herein may "eviscerate" past garnishments issued on writs of execution. If, indeed, such improbable difficulty does arise as to past garnishments, the instant ruling is not rendered any the less correct and just in this case by reason thereof. Any retroactive consequence of the present decision must be considered as it arises.

■ Mexofina contends that, as construed in this opinion, the Rules would be in conflict with the official form of garnishee summons [Form 1(h)] attached to the Rules. Of course, the Rules prevail over the Forms. We think that the Form did not have the informative, determinative, and probative value that Mexofina finds in it.

■ Mexofina states that Rule 4(b)(6) provides no procedures for framing an issue for trial or for entering judgment for or against the garnishee; that, therefore, there are due process deficiencies. It is to be noted that Rule 4(b)(6) is as complete in this regard as Chancery Rule 4(dd)(3), dealing with sequestration, from which Rule 4(b)(6) was taken. As implemented by appropriate orders of the Court, we know of no substantial difficulty encountered under Rule 4(dd)(3) as to the availability or the adequacy of procedure, or as to fulfillment of the requirements of due process, in the many sequestration proceedings conducted thereunder. We see no reason for any greater difficulty under Rule 4(b)(6).

Mexofina refers to notes of the Bar Committee that drafted the changes to Rules 4 and 5 in 1961. These notes are not part of the record before us; and there is no suggestion that the notes were available to the plaintiff's attorneys as they attempted to comply with the Rules.

Mexofina says that physical delivery to, or physical seizure by, the Sheriff is not a basic characteristic of ordinary garnishment. Attention is directed to the following language of Rule 5(aa)(2):

"* * * If no exceptions are filed by plaintiff to garnishee's answer within the ten day period as aforesaid, a delivery to the Sheriff of the property set forth in the answer by the garnishee, or so much of it as shall satisfy plaintiff's demand, shall be a complete discharge of the garnishee in the proceedings, and the Sheriff shall make a suitable supplemental return on the writ showing the property which has been delivered to him by the garnishee, and shall hold such property subject to the order of the Court. Unless the garnishee delivers such property to the Sheriff within five days after the expiration of the ten day period for plaintiff's exceptions, if any, the Sheriff shall on order of the Court physically seize any property subject to seizure, and with respect to any property set forth in the answer which is not seized or delivered to the Sheriff, the plaintiff on motion may have personal judgment entered against garnishee in favor of plaintiff in an amount equal to the value of the property of defendant in garnishee's custody or possession, or the amount of the plaintiff's judgment, whichever is less, with interest and costs. * * *."

Mexofina contends that in an ordinary garnishment, the property remains in the hands of the garnishee. The above language of Rule 5(aa)(2) is to the contrary.

■ Mexofina points to the language of Rule 4(b)(6), providing that service be made upon the person or corporation

having "possession or custody of the property or control of its transfer." These words do seem innocuous in a garnishment rule expressly limited to property "not susceptible of physical seizure." It is our opinion that these words, indiscriminately taken from Chancery Rule 4(dd) (3), were included in Rule 4(b) (6) by mistake when the language of the Chancery Rule was adopted.

Other points raised in the Petition for Reargument do not, in our opinion, merit further discussion. However, certain language of the opinion as originally filed has been modified, for the sake of clarity, in the light of the Petition.