**LNC INVESTMENTS, INC., Plaintiff,**

v.

**DEMOCRATIC REPUBLIC OF CONGO (formerly, The Republic of Zaire) and The National Bank of Congo (formerly, the Bank of Zaire), Defendants.**

No. 97–135 MMS.

United States District Court, D. Delaware.

Argued July 29, 1999.

Dated Aug. 18, 1999.

608

Kevin G. Abrams, Frederick L. Cottrell, II, and Jeffrey L. Moyer, of Richards, Layton & Finger, Wilmington, DE, of counsel Michael Straus, of Bainbridge & Straus, L.P., Birmingham, AL, for LNC Investments, Inc.

Michael F. Bonkowski, and Scott J. Jensen, of Saul, Ewing, Remick & Saul LLP, Wilmington, DE, of counsel Douglas G. Boven, Garet D. O'Keefe, and Helen N.E. Posnansky, of Crosby, Heafey, Roach & May, Oakland, CA, for Chevron Overseas Petroleum Inc.

## OPINION

SCHWARTZ, Senior District Judge.

This matter arises from the efforts of LNC Investments, Inc. ("LNC") to collect on a default judgment in the approximate amount of $3.5 million ("judgment") against the Democratic Republic of Congo ("DRC") and the National Bank of Congo (collectively the "Judgment Debtors") in the Southern District of New York. LNC seeks discovery of Chevron Overseas Petroleum Inc. ("COPI") and attachment of monies owed to the Judgment Debtors by COPI. Before the Court are LNC's Motion to Show Cause why COPI should not be held in contempt of Court for removing monies owed to the Judgment Debtors

from the District of Delaware and to return those assets to this District and COPI's renewal of its 1998 Motion to Quash the Restraining Notice with Information Subpoena.[1] For reasons which follow, LNC's motion will be denied and COPI's motion to quash granted.

## I. PROCEDURAL HISTORY

The present dispute arises out of a long and complicated procedural history.

### A. Background

#### 1. *The Actors in this Matter*

LNC Investments, Inc. is a Delaware company and an indirect, wholly-owned subsidiary of Leucadia National Corporation, a publicly traded company. The Judgment Debtors, once known as the Republic of Zaire and the Bank of Zaire are now known as the Democratic Republic of Congo and the Bank of Congo since the nation changed its name after a civil war.[2] Chevron Overseas Petroleum Inc. is a Delaware corporation. COPI is domiciled in San Ramon, California, where it maintains its principal place of business. COPI, through a series of mergers and name-changes, was a successor to Zaire Gulf Oil Company, a signatory to a petroleum concession agreement with DRC.

#### 2. *The New York Litigation*

LNC brought this action in the Southern District of New York against the Judgment Debtors for breach of contract arising out of a refinancing credit agreement. On January 8, 1997, that Court entered a default judgment against the Judgment Debtors in the amount of $3,917,497.11. On March 4, 1997, a Writ of Execution

1. The parties originally asked the Court to decide LNC's Motion to Compel Discovery in Aid of Execution, dated March 3, 1999, and COPI's Counter–Motion for a Protective Order. At oral argument and ensuing discussions, the parties were able to resolve all of their differences but one. That one difference was resolved during a telephonic hearing held on August 17, 1999. Those motions will be

dismissed as moot, along with COPI's motion for costs and attorney's fees. LNC's motion for costs and attorney's fees will be held in abeyance.

2. The DRC and the National Bank of Congo were formally added to the judgment by amendment dated February 18, 1999.

pursuant to Fed .R.Civ.P. 69(a) and 28 U.S.C. § 1610(c) was entered in that action in favor of LNC and against the Judgment Debtors, and LNC commenced execution proceedings in the Southern District of New York. However, LNC was not able to satisfy the judgment through proceedings in that district.

## B. Delaware Litigation

### 1. *Prior Disputes*

After learning COPI was a successor to Zaire Gulf Oil Company, a signatory to a petroleum concession (the "Concession Agreement") under which payments were apparently periodically due to be paid the Judgment debtors, LNC sought discovery of COPI.

On December 22, 1997, LNC served a subpoena ("First Subpoena") issuing from this Court with a request for documents. On December 26, 1997, LNC filed the New York Judgment with this Court, and on December 29, 1998, LNC filed a Writ of Execution, Docket Item ("D.I.") 3, pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1610(c). The Writ of Execution against the Judgment Debtors issued January 9, 1998, under signature and seal of the Clerk of this Court. D.I. 3.

LNC filed a "Restraining Notice to Garnishee with Information Subpoena" ("Restraining Notice") with the Clerk of the Court on January 26, 1998.[3] D.I. 5. According to the Docket Entry dated January 29, 1999, the Clerk then provided a certified copy of the Restraining Notice along with the form used for service by the U.S. Marshal to the U.S. Marshal's office. On January 30, 1998, the U.S. Marshal served a "Restraining Notice" ("Restraining Notice") upon COPI's registered agent for service of process in Delaware. D.I. 7.

The Restraining Notice consists of a two pages of paper, titled "Restraining Notice to Garnishee with Information Subpoena," and signed by local counsel for LNC, which, among other things, commands

COPI to take notice it is not to dispose of any debt owed to the Judgment Debtors and commands COPI "to answer the within questions in writing, under oath, and return the original of the questions together with our answers" to the local counsel whose signature appeared below. D.I. 5, at 2. Attached to this document is the form for subpoena in a civil case used by this Court, directing COPI to produce documents as referenced in an "Attachment A." D.I. 5. Attachment A follows, with definitions and categories of documents to be produced. D.I. 5.

·LNC initially asserted that the Writ of Execution (D.I. 3), which bears the signature of a Deputy Clerk of this Court and the seal of this Court, was also served with the Restraining Notice on January 30, 1998. However, COPI submitted affidavits of the "Service Process Coordinator" for COPI's registered agent for service of process in Delaware, D.I. 70, COPI's Vice President for Negotiations and Legal, D.I. 71, and a Legal Process Analyst for COPI, D.I. 74, denying the Writ of Execution was served on COPI at that time. At oral argument, LNC conceded it could not prove the Writ of Execution was served on COPI with the Restraining Notice on January 30, 1998.

COPI disputed its obligation to produce documents pursuant to either the First Subpoena or the Restraining Notice. On March 12, 1998, LNC filed its first Motion to Compel Discovery in Aid of Execution. COPI filed a Counter–Motion for a Protective Order to quash or modify subpoena, quash restraining notice with information subpoena, and bar discovery in Delaware.

The Court held oral argument on the motions November 19, 1998. At the November 19 hearing, LNC agreed to issue a new subpoena, drawing its request for documents more narrowly and setting a five-year time limit on document requests. The parties also agreed in principle to a Stipulation and Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil

---

**3.** A copy of the Restraining Notice, D.I. 5, is attached as Appendix A.

Procedure regarding confidential information, signed by the Court December 12, 1998. D.I. 35. The Court entered an order: 1) denying as moot LNC's Motion to Compel and COPI's Motions to Quash the first subpoena, for a Protective Order, and for an Order barring discovery in Delaware; and 2) denying as premature COPI's Motion to Quash the Restraining Notice with Information Subpoena, on December 28, 1998. D.I. 38.

### 2. The Instant Dispute

LNC issued and served a subpoena ("New Subpoena") on December 24, 1999, pursuant to the Court's guidance at the November 19 hearing. COPI objected to the subpoena but did produce some documents.[4] LNC also requested the Clerk's office issue a new Writ of Execution, D.I. 44, and a Writ of Attachment, D.I. 43. The United States Marshal served the Writs of Execution and Attachment on COPI's registered agent for service of process in Delaware on February 25, 1999, with COPI responding on March 17, 1999.

The documents which COPI has produced pursuant to the New Subpoena included documents revealing for the first time that COPI had assigned its rights, interests and obligations under the Concession Agreement to a Liberian corporation called Chevron International Limited on April 6, 1998. D.I. 63, Exh. C. On the same day, Chevron International Limited assigned those same rights, interests and obligations to Chevron Oil Congo (D.R.C.) Limited, a Bermudian corporation.[5] *Id.* With those transfers, which took place over six months before the November 19, 1998 hearing, COPI allegedly divested itself of the obligations owed to the Judgment Debtors in the District of Delaware.

Upon learning of the assignments of obligations and/or future obligations owed to the Judgment Debtors, LNC filed a Motion to Show Cause, urging COPI be held in contempt of Court for moving obligations and/or future obligations owed to the Judgment Debtors out of the District of Delaware in contravention of the Restraining Notice served January 30, 1998. LNC further requested the Court order the property of the Judgment Debtors, which COPI had allegedly held prior to April 6, 1998, be returned to the District of Delaware. COPI responded by renewing its Counter–Motion to Quash the Restraining Notice with Information Subpoena which the Court had denied as premature in its order of December 28, 1998.

### II. DISCUSSION

LNC contends the April 6, 1998, transfers constitute a violation of the Restraining Notice served on January 30, 1998. On this basis, LNC urges COPI should be required to show cause why it should not be held in contempt and further required to show why the obligations of the Judgment Debtors transferred out of the District by the April 6 transfers should not be ordered returned to the District of Delaware. COPI contends that because the Restraining Notice was not a valid court order or effective attachment of obligations owed by COPI to the Judgment Debtors, the Restraining Notice provides no basis for a holding of contempt or for the return of the obligations to the District. It follows the merits of the motions turn on the effectiveness and validity of the January 30, 1998 Restraining Notice.

### A. The Law Governing Post–Judgment Proceedings

Rule 69 of the Federal Rules of Civil Procedure governs execution on judgments of United States District Courts. That Rule states in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs other-

---

4. This dispute eventually led to LNC's Motion to Compel of March 3, 1999, which, as already rehearsed, the parties settled amicably at the hearing held July 29, 1999.

5. Throughout, these transfers will be referred to as the "April 6 transfers."

wise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed.R.Civ.P. 69(a). Pursuant to Rule 69(a), a judgment creditor must pursue enforcement of its judgment through a writ of execution, which LNC had done in its pursuit of its judgment in Delaware. However, proceedings supplementary to and in aid of a judgment, including collection of the property of the judgment debtors held by third parties, is to be conducted by state law absent a controlling federal statute. Fed.R.Civ.P. 69(a); *Schreiber v. Kellogg,* 50 F.3d 264, 267 (3d Cir.1995); *Arnold v. Blast Intermediate Unit 17,* 843 F.2d 122, 125 (3d Cir.1988).

"Substantial compliance with state procedure may be sufficient." *Arnold,* 843 F.2d at 125. The Supreme Court has explained some substitutions may be necessary: for example, the U.S. Marshal rather than a sheriff may execute the judgment, or proceedings may be held in a federal courthouse rather than the prescribed state courthouse. *Yazoo & M.V.R. Co. v. Clarksdale,* 257 U.S. 10, 24–25, 42 S.Ct. 27, 66 L.Ed. 104 (1921). However, no precedent suggests this flexibility allows a court to wholly abandon state procedural requirements. In *Thomas, Head and Greisen Employees Trust v. Buster,* 95 F.3d 1449, 1452 (9th Cir. 1996), after recognizing Rule 69(a) is "not 'meant to put the judge into a procedural straitjacket ...,' *Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221, 1226 (7th Cir. 1993)," the appellate court went on to approve the execution procedures followed by the parties and district court because "we think '[t]he procedure followed here ... accord[ed] with the spirit of the Rules and ... [was] a sufficiently close adherence to state procedures.' *See*

*Chambers v. Blickle Ford Sales, Inc.,* 313 F.2d 252, 256 (2d Cir.1963)." *Thomas, Head,* 95 F.3d at 1452. Indeed, the Court in *Thomas, Head* determined the execution procedure used in the execution proceedings in the U.S. District Court for the District of Alaska was appropriate only after considering two decisions of the Alaska Supreme Court authorizing proceedings not expressly authorized by the Alaska rule governing execution of judgments. *Id.* at 1453. Thus, while some flexibility, such as the use of U.S. Marshals in substitution for sheriffs, is necessary to make Rule 69(a)'s reference to state law practicable, state law governs the level of procedural compliance.

■ The governing Delaware law includes Title 10, Chapter 35 of the Delaware Code, Title 10, section 5031 of the Delaware Code, the Rules of the Superior Court and judicial precedent construing those rules. Title 10, section 5031 of the Delaware Code provides:

> The plaintiff in any judgment in a court of record, or any person for him lawfully authorized, may cause an attachment, as well as any other execution, to be issued thereon, containing an order for the summoning of garnishees, to be proceeded upon and returned as in cases of foreign attachment.

By its reference to cases of foreign judgment, § 5031 incorporates Chapter 35 of Title 10 of the Delaware Code. Under those provisions, "[g]oods, chattels, rights credits, moneys, effects, lands and tenements" may be attached. 10 Del.C. § 3508. This includes debts owed the judgment debtors by the garnishee. *McNeilly v. Furman,* 95 A.2d 267, 271 (Del.1953).

Both parties agree that under Delaware law, the appropriate form for attachment is a writ of attachment *fieri facias* ("fi.fa."). *Wilmington Trust Co. v. Barron,* 470 A.2d 257, 262 (Del.1983). The Delaware Supreme Court has explained the nature and effect of a writ of attachment fi.fa.:

[W]hen the property attached is not to be physically seized but is in the possession or control of another, or if the thing to be attached is not such property as is susceptible of seizure, such as rights and credits, the sheriff must summon the person who has the goods, chattels, rights, credits, money or effects of the defendant in his possession, who is termed the garnishee, to appear at the court to which the writ is returnable, and declare what property of the defendant he has in his hands.

*Id.*

The Superior Court is empowered to make all necessary rules for, *inter alia*, "the form of process, the manner of issuance and return thereof, modes of proof, manner of seizure of property ..., and all other matters relating to attachment proceedings...." 10 Del.C. § 3512. The Superior Court Rules, along with the statute, govern the process for attaching property by writ of attachment fi.fa. Rule 4 explains the process for issuance of writs. Rule 4(a) requires an attorney to complete a praecipe and form of the writ with space for the signature of the Prothonotary under the seal of the Court. Del.Super.Ct.Civ.R. 4(a). Rule 4(c) contains both the general and specific contents for a writ of attachment fi.fa. Among other requirements, a writ must, "bear the date of its issuance, be signed by the Prothonotary or one of the Deputy Prothonotaries, be under the seal of the Court, contain the name of the Court and the names of the parties, ... and the time within which these Rules require the defendant to appear and defend...." Del.Super.Ct.Civ.R. 4(c). Furthermore,

[t]he writ of attachment shall be directed to the person serving the writ and command that person to attach the defendant by all the defendant's real and personal property in the county to which the writ is issued and to summon defendant's garnishees to appear within 20 days after service of the writ to answer or plead and shall notify them that, on

failure to do so, they may be compelled by attachment.

Del.Super.Ct.Civ.R. 4(c)(2).

■ Superior Court Rule 5(aa)(2) provides further rules governing the summoning of a garnishee through writs of attachment. That rule provides in relevant part:

Any garnishee duly summoned (either on mesne writ of attachment or execution process) shall serve upon plaintiff a verified answer within 20 days after service of process, which shall specify what goods, chattels, rights, credits, money or effects of a defendant, if any, the garnishee has in its possession or custody.... Before the sheriff shall serve any writ of attachment, the sheriff shall receive from the plaintiff the sum of $20 for each party to be summoned as garnishee ... and said sum shall be delivered to each garnishee when the summons is served; ... no garnishee will be required to answer without first having received the garnishee fee as aforesaid.

Del.Sup.Ct.Civ.R. 5(aa)(2). In *Delaware Trust v. Carolina Freight Carriers Corp.,* 1986 WL 2831 (Del.Super. March 5, 1986), the Superior Court explained the effect of failure to tender the $20 fee:

Although the garnishee is not required to answer without first having received the garnishee fee, it does not follow that the garnishee may refuse the tender of the fee in order to avoid its obligation to answer. Nor is it the case, as the defendant argues, that the plaintiff must file a general writ in place of the attachment fi.fa.....

*Id.* at *3. Contrary to COPI's assertions, failure to tender the garnishment fee does not invalidate the writ, but merely relieves the garnishee of the obligation to answer it. It follows COPI's challenge to the effectiveness and validity of the Restraining Notice based on the failure to tender the $20 garnishee fee must be rejected.

The Superior Court has provided a form for the writ of attachment fi.fa. ("Form 45").[6] Form 45 commands the sheriff to

---

**6.** A copy of Form 45 is attached as Appendix B.

attach the goods of the judgment debtor in the possession of the garnishee. It further commands the garnishee to inform the plaintiff's attorney of "all money, goods, credits and effects, stocks, bonds,. personal property, and/or real estate belonging to the defendant" currently in its possession and notifies the garnishee that it is required to retain those items until released from the order. Form 45 lists a return date of 20 days and informs the garnishee that failure to respond within 20 days after service may result in default judgment. Finally, the form includes a space to indicate the amounts owed by defendant and a space for the signature of the Prothonotary, per his deputy.

██ "The Forms attached to the Rules will be considered to satisfy the requirements for practice and procedure," *Gordy v. Preform Building · Components, Inc.*, 310 A.2d 893, 897 (Del.Super.1973) (citing *Mackey v. O'Neal*, 47 Del. 483, 93 A.2d 526 (1952)), but the Delaware Supreme Court has also explained that "the Rules prevail over the forms." *Pauley Petroleum, Inc. v. Continental Oil Company*, 235 A.2d 284, 292 (Del.1967). Where a writ adheres to the Rules, it need not necessarily adhere to the Form. *Cf. id.* (stating Form does not dictate interpretation given to the Rules).

With the Delaware law governing garnishment and attachment of property of judgment debtors in the possession of others in mind, the Court turns to an examination of the Restraining Notice to determine whether LNC has adequately satisfied the requirements of that law.

## B. The Restraining Notice served January 30, 1998

As LNC conceded at oral argument, it did not base the January 30, 1998, "Restraining Notice" served on Form 45, but rather used a form from parallel New York litigation to execute on a New York judgment based on a New York statute. *See* N.Y.C.P.L.R. § 5222.[7] Nevertheless, LNC asserts the· Restraining Notice was adequate under Delaware law to effect attachment on COPI.

COPI conceded at oral argument that *substantively,* the Restraining Notice was the same as Form 45, with one exception. While Rules 4(c)(2) and 5(aa)(2) of the Superior Court Civil Rules as well as Superior Court Form 45 provide for a 20 day return date by which the garnishee must answer the writ, the Restraining Notice states, "NOW THEREFORE, WE COMMAND YOU (as defined above), to answer the within questions in writing, under oath, and return the original of the questions together with your answers to the undersigned within seven (7) days of service upon you." D.I. 5, at 2. In addition, COPI urges the Court that the writ is neither valid nor effective because of a formal procedural defect: the Restraining Notice issued over the signature of local counsel for LNC, and not the signature of the Clerk of the Court. The issue then becomes whether designation of the seven days as opposed to 20 days for the garnishee to answer the Restraining Notice and/or failure to have a Court officer sign the Restraining Notice over the seal of the Court departs from Delaware law so as to render the Restraining Notice ineffective and invalid.[8]

██ The Court turns first to the Restraining Notice's seven-day return period. Rules 4(c)(2) and 5(aa)(2) both make clear the period for answer is twenty days. Del. Sup.Ct.Civ.R. 4(c)(2) and 5(aa)(2). LNC's only response to the disparity is that

---

**7.** That statute allows service of a restraining notice of a judgment debtor or the obligor of a judgment debtor over the signature of the attorney for the judgment creditor. N.Y.C.P.L.R. § 5222(a).

**8.** COPI does not suggest the substitution of the U.S. Marshal for the sheriff, and the substitution of the Clerk for the Prothonotary are objectionable. Indeed, as already rehearsed, the Supreme Court has indicated that such substitutions are both necessary and acceptable for the execution of judgments in the federal system. *See Yazoo,* 257 U.S. at 24–25, 42 S.Ct. 27.

COPI and LNC had previously agreed that COPI could have additional time to provide that information which had been requested weeks earlier through discovery in aid of execution. (D.I. 11 [(the First Subpoena)]) Regardless, COPI provided no information whatsoever in response to either LNC's prior discovery or the Attachment. . . .

D.I. 75, at 7–8 n. 10. Whatever earlier assurances or extensions as to time LNC had provided to COPI regarding the First Subpoena, the subsequent "Restraining Notice" purported to order COPI to provide an answer within seven days—almost two weeks less time than that contemplated by the Delaware Superior Court Civil Rules. Thus, COPI was ordered to do something which LNC had no power under the laws of Delaware to order it to do.

■ LNC's implies in briefing that COPI knew what it was required to do under the statute. The short answer is that the issue is not what COPI knew, but rather whether LNC sufficiently complied with Delaware law. The Rules state in plain and ordinary language that a garnishee has 20 days to respond. That is a minimal and easily relayed piece of information which should have been conveyed accurately by LNC to COPI. A proper return date is an essential portion of any document purporting to be a writ of attachment fi.fa. under Delaware law.

■ Turning to the issue of the signature of the Court, LNC makes several arguments. First, it argues that the certification by the clerk's office indicated on the Docket Sheet entry for January 29, 1998 ("Exit to [U.S. Marshal], One cert. copy of DI 5 w/USM 285 form") serves as the signature of the clerk of the Court. Indeed, the copy of D.I. 5 submitted by COPI in its Appendix does contain such a certification. D.I. 66, at Tabs 4–6. On the last page of "Attachment A," [9] what appears to be an ink-stamped statement with a signature appears: ·

CERTIFIED:
AS A TRUE COPY:
   ATTEST:
   PETER T. DALLEO, CLERK
BY /s/ *Brian K. Blackwell*
   Deputy Clerk

D.I. 66, at Tab 6, B–18.

This signature cannot satisfy the requirement of the Delaware Superior Court that the writ be signed by the Prothonotary with the seal of the Court. Del.Super.Ct.Civ.R. 4(c). First, the Restraining Notice itself does not bear the signature. Indeed, the signature appears on "Attachment A". Nowhere in the Restraining Notice is Attachment A referenced. While the form of subpoena served as part of the Restraining Notice references Attachment A, no clear link exists between the Restraining Notice and subpoena, since the Restraining Notice commands COPI to provide sworn, written answers to questions while the subpoena and Attachment A clearly contemplate production of documents.

Second, even if LNC could persuasively argue that the certification appears on the Restraining Notice, the certification does not purport to be a signature by the Court directing what should be done pursuant to the writ. Rather, the certification, by its own terms, is a representation that the document is a "true copy" of the document. Indeed, it is telling that the original of D.I. 5, kept by the Clerk's office does not bear such a signature. By comparison, both Writs of Execution in this matter, D.I. 3 and D.I. 44, contain an original signature for the Clerk of the Court by one of his Deputies on the Clerk's originals. Indeed, the Clerk's originals of those two documents also bear the raised seal of the United States District Court for the District of Delaware, something absent from the original of the Restraining Notice. It follows the mere "true copy" certification of the last page of D.I. 5 may not be

---

9. Attachment A contains the "questions" the Restraining Notice and attached subpoena

purport to require COPI to answer.

treated as a signature in satisfaction of the writ of attachment fi.fa. required by Rule 4(c) of the Delaware Superior Court Civil Rules. Moreover, there is no indication that the seal of this Court was placed on the document.

LNC also argues the existence of the Writ of Execution, signed by a Deputy clerk for the Clerk and bearing the seal of the Court, which authorizes LNC to execute upon the property of the Judgment Debtors suffices to indicate that the Restraining Notice was issued under the signature and seal of the Court. However, the Restraining Notice makes absolutely no mention of the existence of such a writ authorizing LNC to take such action. LNC's contention at oral argument that local counsel for COPI could have investigated whether a Writ of Execution had issued is beside the point. The burden is upon LNC to employ and confirm correct execution process, not COPI to conduct an investigation into what was not served. The execution process should be self-explanatory on its face. A garnishee should not have to contact the clerk of the Court, to retrieve the docket sheet, to know the Writ of Execution was a document which might authorize LNC to execute in the District or to request the Clerk to show him or her that document to confirm that LNC was so authorized. LNC will not be permitted to set in motion an execution process without regard for the requirements of Delaware state law. To hold otherwise would render meaningless the requirement of Rule 69(a) that judgment creditors follow state law in proceedings to execute on the judgment. Fed.R.Civ.P. 69(a).

The Delaware Superior Court Rules explicitly require the signature and seal of the Prothonotary (substituted by the Clerk of the Court in this particular instance) so that the writ issues *from the Court*. Without such a signature or seal, the document is not an order of the Court but an order of an attorney. While some states may allow such an order to issue over the signature of an attorney, Delaware has not chosen to do so. However formalistic

LNC complains such a requirement is, that requirement ensures that a garnishee understands in no uncertain terms that a *Court*, with all its powers of enforcement, is commanding it to take particular actions. Without the signature and seal of the Court, it is impossible to say a *Court* has commanded a garnishee to take the action directed by the papers served. Therefore, without the signature and seal of the Court, the Restraining Notice was not an order of the Court and can be neither valid nor effective as a writ of attachment fi.fa.

■ Because of the flaws in the Restraining Notice—the flawed return date and the absence of the signature and seal of the Court—it was neither an effective attachment or a valid order. Therefore, the Court will quash the Restraining Notice, and deny LNC's motion to order return of the Judgment Debtor's property to the District of Delaware. Because the Restraining Notice was not an order of the Court, much less a valid one, actions in contravention of the Restraining Notice cannot subject COPI to being held in contempt of Court. *See Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir.1995) (existence of a valid court order is an element of contempt). The Court will deny LNC's motion for an order to show cause why COPI should not be held in contempt of the Restraining Notice.

### III. CONCLUSION

This Court will not allow parties to disregard clear-cut, easy-to-follow rules established by the Delaware Superior Court where those rules have a clear purpose. The Delaware Superior Court Civil Rules clearly set out the timing and signature and seal requirements to be followed. Failure to follow either one would compel this Court to reach the conclusion that the Restraining Notice is invalid and ineffective. LNC could have easily complied with the clear mandates of Delaware law. It chose instead to tweak a New York state form of execution process without regard for the requirements of Delaware law. LNC's motions will be denied and COPI's

motion to quash the Restraining Notice will be granted.

## APPENDIX A

### RESTRAINING NOTICE TO GARNISHEE WITH INFORMATION SUBPOENA

TO: Chevron Overseas Petroleum, Inc. c/o its registered agent The Prentice–Hall Corporation System, Inc. 1013 Centre Road Wilmington, DE 19805

WHEREAS, in an action in the United States District Court, Southern District of New York, between LNC Investments, Inc., as plaintiff, and The Democratic Republic of Congo (formerly the Republic of Zaire) and The National Bank of Congo (formerly the Bank of Zaire), as defendants, who are all the parties named in the action, a judgment (the "Judgment") was entered on January 9, 1997, in favor of LNC Investments, Inc., judgment creditor, and against The Democratic Republic of Congo (formerly the Republic of Zaire) and The National Bank of Congo (formerly the Bank of Zaire), judgment debtors, in the amount of THREE MILLION NINE HUNDRED SEVENTEEN THOUSAND FOUR HUNDRED NINETY–SEVEN AND $^{11}/_{100}$ DOLLARS ($3,917,497.11). Of the Judgment amount, together with interest thereon from January 9, 1997, THREE MILLION TWO HUNDRED TWENTY–ONE THOUSAND NINE HUNDRED SEVENTY AND $^{45}/_{100}$ DOLLARS ($3,221,-970.45) remains due and to date unpaid to plaintiff.

WHEREAS, on December 26, 1997 the Judgment was entered in this Court for purposes of execution;

WHEREAS, it appears that you (including, without limitation, any of your parent(s), subsidiary(ies), branches, agencies, instrumentalities and/or affiliated entities) owe a debt to the judgment debtors or are in possession or in custody of property in which the judgment debtors have an interest, including but not limited to any account payable pursuant to any joint venture or other arrangement for the exploration and production of petroleum products.

TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 69 and Title 10 Delaware Code Chapter 35 and Subchapter VIII, you (as defined above) are hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with, any such property or payover or otherwise dispose of any such debt except to the United States Marshal and as therein provided.

TAKE FURTHER NOTICE that this notice also covers all property in which the judgment debtors have an interest hereafter coming into your possession or custody, and all debts hereafter coming due from you (as defined above) to the judgment debtors.

NOW, THEREFORE, WE COMMAND YOU (as defined above), to answer the within questions in writing, under oath, and return the original of the questions together with your answers to the undersigned within seven (7) days of service upon you. False swearing or failure to comply with this subpoena is punishable as a contempt of court.

TAKE FURTHER NOTICE that disobedience of this Restraining Notice is punishable as a contempt of court.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 26, 1998, I caused to be delivered by Certified Mail, postage pre–paid, return receipt requested, two true and correct copies of the foregoing Restraining Notice to Garnishee With Information Subpoena to the following:

CT Corporation
1633 Broadway
New York, NY 10019

AO 88 (11/91) Subpoena in a Civil Case

# United States District Court

**_____ DISTRICT OF DELAWARE_____**

LNC Investments, Inc.,

Plaintiff,

v.

The Democratic Republic of Congo (formerly The Republic
of Zaire) and The National Bank of Congo (formerly The
Bank of Zaire),

Defendants.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER:97-MC-135

TO:   **Chevron Overseas Petroleum, Inc.**
   **c/o Prentice-Hall Corporation System, Inc.**
   **Registered Agent**
   **1013 Centre Road**
   **Wilmington, DE 19805**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in
the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):  **See Attachment A.**

| PLACE | DATE AND TIME |
|---|---|
| **Richards, Layton & Finger, One Rodney Square, 10th and King Streets, P.O. Box 551, Wilmington, DE 19899** | **See Restraining Notice served concurrently herewith** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more
officers, directors, managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person
designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorneys for Plaintiff/Judgment Creditor | January 26, 1998 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
   **Claudia A. DelGross, Esq., Richards, Layton & Finger, One Rodney Square, P.O. Box 551,**
   **Wilmington, DE 19899 • (302) 651-7626**

RLF2-722540-1

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse) AO 88 (11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorneys fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On a timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim

RLF2-722540-1

## ATTACHMENT A

## DEFINITIONS

"DOCUMENTS" means writings and recordings, as defined in Federal Rules of Evidence § 1001, and includes but is not limited to royalty statements, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, facsimiles, bulletins, notes or summaries of meetings, notes of oral communications, notes of interoffice and intraoffice telephone calls, diaries, chronological data, minutes, books, reports, studies, appraisals, summaries,

pamphlets, printed matter, charts, accounting records, ledgers, journals, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements or reports (including bank, brokerage, mutual fund, and other investment account statements), shipping records, deposit tickets, checks, advices, credit memoranda, debit memoranda, checkbook stubs, schedules, affidavits, pleadings, agreements, releases, contracts, canceled checks, transcripts and graphic or aural records of any kind.

"ZAIRE" means any of the following: the National Bank of Congo, Banque Nationale du Congo, the Bank of Zaire, Banque du Zaire, the Democratic Republic of Congo, Republique Demoncratique du Congo, Republic of Zaire or Zaire.

"YOUR POSSESSION, CUSTODY OR CONTROL" means the possession, custody, or control of any of the following: (i) Chevron Corporation; (ii) subsidiaries, joint ventures, partnerships and other entities in which Chevron Corporation directly or indirectly has an ownership interest and which explore for or produce oil or gas from fields located in **ZAIRE**; (iii) subsidiaries, joint ventures, partnerships and other entities included in Chevron Corporation's most recent consolidated financial statements; (iv) Gulf Oil Zaire S.A.R.L.; and (v) Zaire Gulf Oil Company.

"CHEVRON ENTITY" means any of the following: (i) Chevron Corporation; (ii) subsidiaries, joint ventures, partnerships and other entities in which Chevron Corporation directly or indirectly has an ownership interest and which explore for or produce oil or gas from fields located in **ZAIRE**; (iii) subsidiaries, joint ventures, partnerships and other entities included in Chevron Corporation's most recent consolidated financial statements; (iv) Gulf Oil Zaire S.A.R.L.; and (v) Zaire Gulf Oil Company.

## CATEGORIES

*Category One:* Chevron Corporation's Form 10–K for the fiscal year ended December 31, 1996 at page 5 states: "The petroleum activities of the company are widely distributed geographically, with major operations in the United States, Canada, Australia, United Kingdom, Congo, Angola, Nigeria, Papau, New Guinea, Indonesia, China and Zaire." This category requests the most recent **DOCUMENTS in YOUR POSSESSION, CUSTODY OR CONTROL** which reflect the following for each **CHEVRON ENTITY** which has petroleum activities in Zaire: (i) the legal name of the entity; (ii) the state of the United States of America of incorporation or the country, other than the United States of America, of incorporation; (iii) the name(s), address(es) and phone number(s) of the agent(s) for service of process; (iv) the name(s), work address(es), and work phone number(s) of its officers; (v) the states of the United States of America in which the entity is qualified to do business; and (vi) the percentage of the entity directly and indirectly owned by Chevron Corporation.

*Category Two:* Any **DOCUMENTS** less than five years old in **YOUR POSSESSION, CUSTODY OR CONTROL** reflecting, relating, mentioning or referring in any way to royalty or concession payments for the exploration or production of oil or gas from fields located in **ZAIRE**.

*Category Three:* Any **DOCUMENTS** in **YOUR POSSESSION, CUSTODY OR CONTROL** reflecting, relating, mentioning or referring in any way to contracts or other agreements entered into with **ZAIRE**.

*Category Four:* Any **DOCUMENTS** less than five years old, including but not limited to accounting records, in **YOUR POSSESSION, CUSTODY OR CONTROL** reflecting, relating, mentioning or referring to the full or partial satisfaction of accounts, debts or obligations owed to or from **ZAIRE**.

*Category Five:* Any **DOCUMENTS** less than five years old in **YOUR POSSESSION, CUSTODY OR CONTROL** reflect-

ing, relating, mentioning or referring to transfers of funds to or from **ZAIRE.**

*Category Six:* Chevron Corporation's Form 10–K for the fiscal year ended December 31, 1996 at page 5 states: "The petroleum activities of the company are widely distributed geographically, with major operations in the United States, Canada, Australia, United Kingdom, Congo, Angola, Nigeria, Papau, New Guinea, Indonesia, China and Zaire." This category requests for each of the past five years, organization charts showing Chevron Corporation's direct and indirect ownership interests in the **CHEVRON ENTITIES** which have petroleum activities in Zaire.

*Category Seven:* For the past five years, any tax, excise or duty returns filed with **ZAIRE** and related work papers and schedules in **YOUR POSSESSION, CUSTODY OR CONTROL.**

*Category Eight:* For the past five years, any **DOCUMENTS** which mention or refer in any way to **ZAIRE** which were provided to the auditors of Chevron Corporation by any of the following: (i) Chevron Corporation; (ii) subsidiaries, joint ventures, partnerships and other entities in which Chevron Corporation directly or indirectly has an ownership interest and which explore for or produce oil or gas from fields located in **ZAIRE;** (iii) subsidiaries, joint ventures, partnerships and other entities included in Chevron Corporation's most recent consolidated financial statements; (iv) Gulf Oil Zaire S.A.R.L.; (v) Zaire Gulf Oil Company; and (vi) **ZAIRE.**

## APPENDIX B