PAULEY PETROLEUM INC., a corporation of the State of Delaware, PAULEY PAN AMERICAN PETROLEUM, INC., a corporation of the State of Delaware, and AMERICAN INDEPENDENT OIL COMPANY DE MEXICO, S.A. DE C.V., a corporation of the Republic of Mexico, Plaintiffs Below,
Appellants,

*vs.*

CONTINENTAL OIL COMPANY, a corporation of the State of Delaware, Defendant Below,
Appellee.

*Supreme Court, On Appeal, January 24, 1968.*

*H. Albert Young, H. James Conaway, Jr.,* and *Ben T. Castle,* of Young, Conaway, Stargatt & Taylor, Wilmington, and *Orris R. Hedges,* Los Angeles, Cal., for appellants.

*James M. Tunnell, Jr.* and *William S. Megonigal, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *Joseph C. Hutcheson, III,* and *Finis E. Cowan,* of Baker, Botts, Shepherd & Coates, Houston, Tex., for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice: This an appeal from the denial of a preliminary injunction which would have required Continental Oil Company (hereinafter "Continental"), a corporation of the State of

Delaware, defendant below, to cause its wholly-owned subsidiary, Mexofina S.A. de C.V. (hereinafter "Mexofina"), a Mexican corporation, to cease the prosecution of an action filed in the First District Court for Civil Matters of the Republic of Mexico against Pauley Pan American Petroleum, Inc. (hereinafter "Pauley Pan Am"), a Delaware corporation, and American Independent Oil Company, S.A. de C.V. (hereinafter "Aminoil"), a Mexican corporation, wholly-owned subsidiaries of Pauley Petroleum Inc. (hereinafter "Pauley"), a Delaware corporation. The plaintiffs below, Pauley, Pauley Pan Am and Aminoil, appeal.

In order to understand the controversy, some background history is necessary. About 1950, Edwin W. Pauley and his associates (hereinafter "Pauley Group") obtained three mineral exploration contracts for the petroleum exploration of certain upland and tideland areas in Mexica from Petroleos Mexicanos (hereinafter "Pemex"), a nationalized petroleum instrumentality of the Republic of Mexico. Under these contracts, the Pauley Group was entitled to recover approved costs incurred in the exploration and, in the event of oil production, certain percentages of the production as their compensation. In the decade 1950 to 1960, the Pauley Group, acting through subsidiaries wholly-owned by Pauley, *viz.,* Pauley Pan Am (which was authorized to do business in Mexico), Mexofina and Aminoil, conducted the exploration. By 1961, these three Pauley wholly-owned subsidiaries owned all of the interest in the three exploration contracts with Pemex.

In the latter part of 1960, Continental became interested in investing in the oil exploration conducted by the three Pauley subsidiaries under contract with Pemex. Acting upon legal advice, Continental decided that it would not be practical for it to obtain approval for the doing of business in Mexico and accordingly, reached the conclusion that it should invest by acquiring one of the Pauley subsidiaries. Ultimately, Continental purchased all of the capital stock of Mexofina in a good-faith transaction.

Prior to the acquisition of Mexofina by Continental, Pauley management had selected the officers of Mexofina and made all important business decisions for that corporation. Thereafter, Continental carried on in the same fashion.

The ownership of Mexofina was transferred by a contract between Continental and Pauley executed in California and described as the "Purchase Agreement of 1961". Under the terms of this contract, Continental acquired all of the stock of Mexofina, and Pauley caused a 50% interest in certain of the contracts with Pemex to be conveyed to Mexofina.

·By the Purchase Agreement of 1961, Pauley Pan Am was designated as the operator and had exclusive control and management of operations conducted under the provisions of the contracts with Pemex.

The parties continued to operate under the 1961 Agreement until June, 1962. At that time, pursuant to the desire of Continental to make a heavier investment in these Mexican oil operations, three separate agreements were entered into between the several corporations concerned. A "Purchase Agreement of 1962" was entered into between Mexofina, Aminoil and Pauley Pan Am. A supplemental agreement was entered into between Pauley, Pauley Pan Am, Aminoil, Mexofina and Continental, and a "Guarantee Agreement" was entered into between Pauley and Continental.

As a result of the Purchase Agreement of 1962, Mexofina acquired an additional 25% interest in one of the Pemex contracts, bringing its total interest to 75% in certain defined tideland areas of exploration. Mexofina was designated as the operator under the Pemex contracts in the defined area in lieu of Pauley Pan Am. The Guarantee Agreement between Pauley and Continental did not relate to the operation of the exploratory activities on the Mexican oil lands but did guarantee on behalf of Pauley and Continental the proper performance of the obligations of their wholly-owned subsidiaries under the other two contracts. The third agreement, designated as "Supplemental Agreement", amended specifics of the 1961 Agreement and concerned matters affecting only Continental and Pauley.

The Purchase Agreement of 1962, in paragraph 5(d), required Mexofina under certain circumstances and with certain restrictions to "carry" Pauley Pan Am and Aminoil by paying some of the expenses of performing the Agreements with Pemex for a certain period of time. It is paragraph 5(d) of this Agreement which causes the

current litigation since Mexofina, directed by Continental, its parent, has served notice on the Pauley wholly-owned subsidiaries that the so-called "carrying period" has been terminated. As a result, Mexofina now refuses to continue the paying of the expenses under the contracts with Pemex.

This, we understand, is the main controversy between the parties, although Pauley claims in addition damages arising from its dissatisfaction with Mexofina's operating efficiency and employment practices, and with its performance of the exploitation of the contracts with Pemex.

Pauley, Pauley Pan Am and Aminoil instituted an action in the Superior Court of Delaware against Continental and Mexofina. Service was obtained upon Continental. Service was sought to be obtained upon Mexofina by writ of foreign attachment. The property owned by Mexofina sought to be attached was an alleged debt in the approximate amount of $8,000,000 owed by Continental to Mexofina. Mexofina appeared specially and moved to quash the foreign attachment on the ground that the statutory proceedings had not been complied with. The Superior Court, after hearing, quashed the writ. The Pauley plaintiffs appealed to this Court. We ultimately reversed and held that the writ of foreign attachment was validly issued. 235 *A.2d* 284. As of this date, Mexofina has not appeared generally in the Superior Court action.

Prior to the date when Mexofina, under the rule, was required to respond to the Superior Court's writ of foreign attachment, it filed suit in Mexico seeking a declaratory judgment as to its right to terminate the "carried period" provided for by paragraph 5(d) of the Purchase Agreement of 1962 and, also, seeking to recover from Pauley Pan Am and Aminoil moneys allegedly erroneously paid by Mexofina for the benefit of those two corporations.

The Mexican suit filed by Mexofina is similar to the suit instituted in the Superior Court of Delaware in that both seek an interpretation of paragraph 5(d) of the Purchase Agreement of 1962, and the establishment of their rights under it. Each action, however, seeks additional money damages. Mexofina seeks damages for the alleged improper refusal of Pauley Pan Am and Aminoil to pay

expenses it claims they were obliged to pay under the Purchase Agreement of 1962. In the Superior Court action the Pauley plaintiffs seek to recover damages incurred subsequent to 1964, whereas Mexofina seeks to recover damages incurred from May, 1962 to date.

Following the filing of the Mexican action by Mexofina, and prior to any ruling by the Superior Court as to the validity of the writ of foreign attachment, the Pauley plaintiffs filed an action in the Court of Chancery seeking a mandatory injunction to order Continental to compel its wholly-owned Mexican subsidiary to dismiss the Mexican action. After hearing and briefing, the Chancellor refused to issue a preliminary injunction. This refusal is now before us in this appeal.

The Chancellor held, assuming that Continental wholly dominated and controlled Mexofina, that, nevertheless, there could be no piercing of the corporate veil in order to compel Mexofina to cease its Mexican lawsuit. The Pauley plaintiffs' argument in this respect is that, in actuality, they are not seeking to pierce the corporate veil, but are merely seeking to compel Continental as whole owner of Mexofina and exercising ultimate and active control over it, to compel its dominated subsidiary to take certain action.

The Chancellor, however, treated the matter as an effort to disregard the separate corporate entities of these two corporations and, in effect, to set aside the separateness of the two and treat the two as one. In so doing, we are of the opinion that he was correct.

■ There is, of course, no doubt that upon a proper showing corporate entities as between parent and subsidiary may be disregarded and the ultimate party in interest, the parent, be regarded in law and fact as the sole party in a particular transaction. This, however, may not be done in all cases. It may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved. 1 *Fletcher, Cyclopedia Corporations (Perm.Ed.)*, § 41; *Martin v. D. B. Martin Co.*, 10 *Del.Ch.* 211, 88 *A.* 612, 102 *A.* 373; *Equitable Trust Co. v. Gallagher*, 34 *Del.Ch.* 76, 99 *A.2d* 490, and *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 38 *Del.Ch.* 490, 154 *A.2d* 684.

There is no showing whatsoever in this litigation of fraud or other elements which would authorize the disregard of the separate corporate entities of Continental and its wholly-owned subsidiary, Mexofina. There is nothing to put this case within the framework required to disregard corporate entities and treat the two separate corporations as one. As a matter of fact, as far as the record before us shows, the separate existence of Mexofina serves a most legitimate business purpose.

The Pauley plaintiffs argue that they are not seeking to pierce the corporate veil, but are merely seeking for various equitable reasons to compel Continental to exercise its dominant control over its subsidiary to accomplish the termination of the Mexican law suit which, it is argued, is unfair to the Pauley plaintiffs.

Thus, it is argued that they have the right to have the Purchase Agreement of 1962, and in particular paragraph 5(d) thereof, construed in accordance with Delaware law. This argument is hotly controverted by Continental but, be that as it may, this is one issue which ultimately must be determined in the litigation. We do not think the current case on appeal from Chancery is the proper one in which that question should be decided.

The contract is, of course, written in English without a contemporaneous, executed paper of equal dignity written in Spanish. This, however, despite the vehement argument of the Pauley plaintiffs, does not mean necessarily that Delaware law is applicable. The Pauley plaintiffs also argue strenuously that a particular provision of the 1961 contract, requiring construction under the law of Delaware, has been impliedly incorporated into the Purchase Agreement of 1962. In point of fact, however, the Purchase Agreement of 1962 omits any reference to incorporation by reference of this particular provision of the 1961 Agreement. The record made by the Pauley plaintiffs indicates that they thought the applicable law provision was to be incorporated, while the Continental record indicates that its omission from the Purchase Agreement of 1962 was, at least on its part, deliberate and that it intended the governing provisions of the Purchase Agreement of 1962 to be determined in accordance with Mexican law. All parties are agreed that the final negotiations of the Purchase Agreement of 1962 were conducted in Mexico City and that it was in fact executed in Mexico City in the Republic of Mexico.

This question is one which must be decided. It might well be a difficult one, but we think the present case is not the one in which that question should be determined.

The sole question before us is whether or not the Courts of Delaware should interfere by injunctive process to prevent the going forward with a law suit in another jurisdiction for the reason that there is pending in Delaware a law suit upon similar issues between some of the parties.

We note that while the foreign attachment process of the Superior Court, issued against the alleged property of Mexofina, has been upheld, Mexofina has not as yet appeared generally as a party before the Superior Court. Mexofina, it seems to us, might well be an indispensable party to the cause of action sought to be asserted by the Pauley plaintiffs in the Superior Court and, yet, Mexafina is not a party defendant in that litigation as yet. It may well be that in the future Mexofina will voluntarily appear, in which event the Superior Court will have full and complete jurisdiction over all necessary parties, but that event has yet to take place.

The Purchase Agreement of 1962, the basis of this litigation, is between Pauley Pan Am, a Delaware corporation, wholly owned by Pauley; Aminoil, a Mexican corporation, wholly owned by Pauley, and Mexofina, a Mexican corporation, wholly owned by Continental. Pauley and Continental are not parties to this Agreement.

In the Mexican action, jurisdiction has been obtained over all of the parties to the Purchase Agreement of 1962; whereas, in the Superior Court, jurisdiction over all of the parties to that Agreement has not as yet been obtained.

Under these circumstances, therefore, it seems clear that a Delaware Court will not interfere by injunctive process with the prosecution of a law suit in another jurisdiction, even though a law suit upon substantially the same controversy is pending in Delaware, when the Delaware Court has not acquired jurisdiction over all of the parties. *Peyton v. William C. Peyton Corp.*, 21 *Del.Ch.* 299, 187 *A.* 849; *Smith v. Biggs Boiler Works Co.*, 32 *Del.Ch.* 287, 85 *A.2d* 365, 367.

The Pauley plaintiffs argue that, nevertheless, the ultimate party liable under these contracts is Continental, and that it is not a party in the Mexican action. Indeed, Continental has never qualified to do business in Mexico and could not be served with process there. It is argued that in the event of a recovery by the Pauley subsidiaries against Mexofina, a further action will be required to be brought against Continental under the Guarantee Agreement of 1962.

The fact is, however, that Continental is not a party to the Purchase Agreement, nor is Pauley, and would probably be an improper party in the Mexican litigation. It is possible, also, that in the Superior Court action it is not an indispensable party. In any event, however, it appears that Mexofina has substantial assets and there is no showing that it is not responsive in damages to the claim asserted by the Pauley plaintiffs against it in the amount of approximately $620,000.

[4] We find that there are no sufficient equities in favor of the Pauley plaintiffs to warrant piercing the corporate veil between Continental and Mexofina, nor are there any overriding equities in favor of them which would lead a Court to restrain the going forward with an action in another jurisdiction upon basically the same cause of action asserted in the Courts of Delaware in which jurisdiction over all the parties has not been obtained. Lack of jurisdiction follows from the fact that there is to be no disregarding the corporate entity of Mexofina.

To hold otherwise would be to impliedly infer that justice could not be obtained in the Courts of the Republic of Mexico. We are unwilling to make such an inferential finding. We are unwilling to restrain an action in the Republic of Mexico upon a contract which may be governed by Mexican law. Indeed, the basic contracts granted by Pemex under which these parties operate are undoubtedly subject to and governed by the laws of the Republic of Mexico. We do not know, but it is entirely possible, that the policy of the Republic of Mexico would prohibit, in connection with the exploitation of contracts with an agency of the Mexican Government, the application of foreign law. As to whether or not the Purchase Agreement of 1962 is such a contract, we express no opinion.

Accordingly, both law suits must go forward. In due time, either the Superior Court or the Mexican Court will necessarily have to decide upon proper application whether or not either should be stayed pending the outcome of the other. We do not suppose for a moment that this decision will be made under other than a proper application of the respect one jurisdiction owes to the courts of another. Of course, any of the parties to the Superior Court action or the Mexican action may make proper application to the court concerned to stay its proceedings pending the outcome of the other. *Cf. Commercial Acetylene Co. v. Avery Portable Lighting Co., C.C.,* 152 F. 642 and *Sperry Rand Corp. v. Sunbeam Corp., 7 Cir.,* 285 F.2d 542.

For the foregoing reasons, the judgment below is affirmed.

## ON PETITION FOR REARGUMENT.

We have read the petition for reargument filed by the appellants and hereby deny it.

The appellants, however, ask us to continue in effect the order staying prosecution of the Mexican action pending decision of this appeal. We decline to do so.