**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 16-1920**

_____

SKY CABLE, LLC; ROBERT SAYLOR,

Plaintiffs,

and

MASSANUTTEN RESORT, LC; GREAT EASTERN RESORT CORPORATION; GREAT EASTERN RESORT MANAGEMENT, INCORPORATED; MICHAEL SHIFFLETT, a/k/a Mike Shifflett; KIMBERLI COLEY, a/k/a Kimberly Coly; MOUNTAINSIDE VILLAS OWNERS ASSOCIATION, INC.; WOODSTONE TIME-SHARE OWNERS ASSOCIATION; SHENANDOAH VILLAS OWNERS ASSOCIATION; SUMMIT AT MASSANUTTEN OWNERS ASSOCIATION; REGAL VISTAS AT MASSANUTTEN OWNERS ASSOCIATION; EAGLE TRACE OWNERS ASSOCIATION,

Defendants,

and

RANDY COLEY, a/k/a Randolph Powhatan Cooley, a/k/a Randy Coly, d/b/a East Coast Sales, d/b/a East Coast Cable, d/b/a Resort Cable, d/b/a Its Thundertime, LLC, d/b/a East Coast Sales, LLC, d/b/a South Raleigh Air, LLC,

Defendant - Appellant,

v.

DIRECTV, INC.

Defendant - Appellee.

---

**No. 16-1943**

---

SKY CABLE, LLC; ROBERT SAYLOR,

        Plaintiffs,

    and

MASSANUTTEN RESORT, LC; GREAT EASTERN RESORT CORPORATION; GREAT EASTERN RESORT MANAGEMENT, INCORPORATED; MICHAEL SHIFFLETT, a/k/a Mike Shifflett; KIMBERLI COLEY, a/k/a Kimberly Coly; MOUNTAINSIDE VILLAS OWNERS ASSOCIATION, INC.; WOODSTONE TIME-SHARE OWNERS ASSOCIATION; SHENANDOAH VILLAS OWNERS ASSOCIATION; SUMMIT AT MASSANUTTEN OWNERS ASSOCIATION; REGAL VISTAS AT MASSANUTTEN OWNERS ASSOCIATION; EAGLE TRACE OWNERS ASSOCIATION,

        Defendants,

    and

RANDY COLEY, a/k/a Randolph Powhatan Cooley, a/k/a Randy Coly, d/b/a East Coast Sales, d/b/a East Coast Cable, d/b/a Resort Cable, d/b/a Its Thundertime, LLC, d/b/a East Coast Sales, LLC, d/b/a South Raleigh Air, LLC,

        Defendant - Appellant,

    v.

DIRECTV, INCORPORATED

        Defendant - Appellee.

---

**No. 16-1944**

---

2

SKY CABLE, LLC; ROBERT SAYLOR,

> Plaintiffs,

> and

RANDY COLEY, d/b/a East Coast Sales, d/b/a East Coast Cable, d/b/a Resort Cable, d/b/a Its Thundertime, LLC, d/b/a East Coast Sales, LLC, d/b/a South Raleigh Air, LLC; MASSANUTTEN RESORT, LC; GREAT EASTERN RESORT CORPORATION; GREAT EASTERN RESORT MANAGEMENT, INCORPORATED; MICHAEL SHIFFLETT, a/k/a Mike Shifflett; MOUNTAINSIDE VILLAS OWNERS ASSOCIATION, INC.; WOODSTONE TIME-SHARE OWNERS ASSOCIATION; SHENANDOAH VILLAS OWNERS ASSOCIATION; SUMMIT AT MASSANUTTEN OWNERS ASSOCIATION; REGAL VISTAS AT MASSANUTTEN OWNERS ASSOCIATION; EAGLE TRACE OWNERS ASSOCIATION,

> Defendants,

> and

KIMBERLI COLEY, a/k/a Kimberly Coly,

> Defendant - Appellant,

> v.

DIRECTV, INCORPORATED

> Defendant - Appellee.

---

**No. 16-1946**

---

SKY CABLE, LLC; ROBERT SAYLOR,

> Plaintiffs,

> and

3

RANDY COLEY, a/k/a Randolph Powhatan Cooley, a/k/a Randy Coly, d/b/a East Coast Sales, d/b/a East Coast Cable, d/b/a Resort Cable, d/b/a Its Thundertime, LLC, d/b/a East Coast Sales, LLC, d/b/a South Raleigh Air, LLC; MASSANUTTEN RESORT, LC; GREAT EASTERN RESORT CORPORATION; GREAT EASTERN RESORT MANAGEMENT, INCORPORATED; MICHAEL SHIFFLETT, a/k/a Mike Shifflett; KIMBERLI COLEY; MOUNTAINSIDE VILLAS OWNERS ASSOCIATION, INC.; WOODSTONE TIME-SHARE OWNERS ASSOCIATION; SHENANDOAH VILLAS OWNERS ASSOCIATION; SUMMIT AT MASSANUTTEN OWNERS ASSOCIATION; REGAL VISTAS AT MASSANUTTEN OWNERS ASSOCIATION; EAGLE TRACE OWNERS ASSOCIATION,

        Defendants,

    and

ITS THUNDERTIME, LLC,

        Defendant - Appellant,

      v.

DIRECTV, INCORPORATED

        Defendant - Appellee.

Appeals from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, Chief District Judge.  (5:11-cv-00048-MFU)

Argued:  January 25, 2018                       Decided:  March 28, 2018

Before KEENAN, WYNN, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** James J. O'Keeffe, IV, JOHNSON, ROSEN & O'KEEFFE, LLC, Roanoke, Virginia, for Appellants.  Robert Ward Shaw, GORDON & REES, LLP, Raleigh, North

Carolina, for Appellant Randy Coley. John Hugo Jamnback, YARMUTH WILDSON, PLLC, Seattle, Washington, for Appellee. **ON BRIEF:** John W. Bryant, BRYANT & IVIE, PLLC, Raleigh, North Carolina, for Appellant Its Thundertime, LLC. Patrick T. Jordan, GORDON & REES, LLP, Seattle, Washington, for Appellant Randy Coley.

---

BARBARA MILANO KEENAN, Circuit Judge:

In 2013, the district court held Randy Coley (Mr. Coley) liable for conducting a fraudulent scheme involving the unauthorized transmission of television programming provided by DIRECTV, LLC (DIRECTV). The court entered judgment against Mr. Coley in the amount of over $2.3 million. After an unsuccessful attempt to satisfy its judgment against Mr. Coley personally, DIRECTV filed a motion in the district court to "reverse pierce" the "corporate veil" of three of Mr. Coley's limited liability companies (LLCs), contending that the three entities were "alter egos" of Mr. Coley. The district court granted DIRECTV's motion, finding that the LLCs were alter egos of Mr. Coley and, thus, were subject to execution of DIRECTV's judgment against Mr. Coley.

This appeal raises the question whether application of Delaware law in this case permits the remedy of reverse piercing a corporate veil of an LLC, when the LLC has been determined to be the alter ego of its sole member. Upon our review, we affirm the district court's decision to allow this remedy, based on our consideration of existing Delaware law and of the overwhelming evidence that the LLCs at issue were alter egos of Mr. Coley. We also affirm the balance of the district court's judgment.

I.

Randy Coley has operated various businesses that provide consumers access to cable television services. DIRECTV widely distributes cable television services to many entities and individuals, including services to facilities that have multiple residential rooms, such as hotels and hospitals. In 2000, Mr. Coley, through his now-defunct

company East Coast Cablevision, LLC (ECC), contracted with DIRECTV to provide its programming to 168 rooms at the Massanutten Resort in Virginia. By May 2011, Mr. Coley was receiving payment for cable services provided to over 2,500 units at Massanutten by DIRECTV. During this time, however, Mr. Coley continued to pay DIRECTV only for services provided to the original 168 units, and fraudulently retained the excess revenue received for services provided to more than 2,300 units. Mr. Coley and ECC continued to provide unauthorized DIRECTV programming to those additional units at the Massanutten Resort until DIRECTV initiated an investigation and discovered the fraudulent scheme.

In 2011, Sky Cable, LLC (Sky Cable), a dealer of DIRECTV's services, sued Mr. Coley, his wife, Kimberli Coley (Mrs. Coley), and DIRECTV, among others, in the district court, alleging that Sky Cable had been deprived of certain revenue as a result of Mr. Coley's unlawful distribution scheme at the Massanutten Resort. The court ultimately dismissed Sky Cable's claims against DIRECTV, but DIRECTV filed cross-claims in the case under 47 U.S.C. § 605(a) against Mr. Coley, Mrs. Coley, and ECC for unauthorized receipt and distribution of DIRECTV's programming.

The evidence before the district court showed that in addition to ECC, Mr. Coley also managed three other LLCs, namely, Its Thundertime, LLC (ITT), East Coast Sales, LLC (East Coast), and South Raleigh Air, LLC (South Raleigh). At issue in this case is appellant ITT, an LLC in which Mr. Coley is the sole member, which was incorporated in 2008 under Delaware law. Mr. Coley stated that he created ITT to hold title to real property for various rental properties purchased by him and his wife. According to Mr.

7

Coley, ITT collected only the profit, as opposed to the entire revenue, obtained from rentals of these properties. DIRECTV has not alleged that ITT was a part of the illegal cable television transmission scheme conducted by Mr. Coley and ECC.

The evidence further showed that Mr. Coley is also the sole member of East Coast and South Raleigh, each of which manages and collects income on the properties owned by ITT. Mr. Coley and these three LLCs have engaged in a continuous commingling of funds. For example, on various occasions, Mr. Coley directed that one LLC transfer funds to another LLC to pay certain expenses, including mortgage payments on properties for which Mr. Coley and his wife were the mortgagors. Mr. Coley at times also admitted that he did not keep complete records of how and why funds were transferred between him and his LLCs.

During the proceedings in the district court and before entry of judgment, Mrs. Coley represented that she had not been involved in her husband's businesses and had no membership interest in ITT. Likewise, Mr. Coley testified prior to entry of judgment that Mrs. Coley had never worked outside the family home, and that Mr. Coley was the sole member of ITT.

After years of litigation, the district court entered judgment in favor of DIRECTV against Mr. Coley and ECC for certain violations of federal communications law under 47 U.S.C. § 605(a). The court awarded damages to DIRECTV in the amount of $2,393,000. DIRECTV and Mrs. Coley stipulated to her dismissal from the case with prejudice, based on representations by her and Mr. Coley that she had no ownership interest in any of Mr. Coley's companies.

8

DIRECTV was unable to collect any payment on the judgment from Mr. Coley, who allegedly has few personal assets. Mr. Coley apparently dissolved ECC after the district court entered its judgment. However, discovery in the case revealed that several of Mr. Coley's LLCs, including ITT, held title to or managed Mr. Coley's assets. Therefore, to enforce its judgment against Mr. Coley, DIRECTV filed a motion in the district court to reverse pierce the corporate veil of ITT, East Coast, and South Raleigh to obtain access to the LLCs' assets. These three LLCs were not parties to the case and had not been served with process.

In response to DIRECTV's motion, Mr. Coley asserted, contrary to his earlier representations made under oath in the district court, that Mrs. Coley had a 50 percent membership interest in ITT and had been a member of ITT since "day one." At the time of DIRECTV's motion, Mrs. Coley was not a party to the lawsuit, and she had not directly asserted her alleged interest in ITT in the district court. However, Mrs. Coley filed an action in North Carolina state court, which later was dismissed, seeking a declaration that she held a 50 percent interest in ITT. *See Coley v. Its Thundertime LLC*, No. 16-CVS-3019, 2016 WL 3944082, at *1, *5 (N.C. Super. Ct. July 15, 2016).

Although Delaware has not expressly adopted the remedy of reverse piercing of a corporate veil, neither party asked the district court to certify that issue of law to the Delaware Supreme Court under that court's Rule 41. In July 2016, over two years after its initial judgment issued, the district court entered an amended judgment rendering the three LLCs co-judgment debtors with Mr. Coley. The district court held that: (1) under Delaware law, the three LLCs were alter egos of Mr. Coley, and (2) that Delaware would

9

recognize reverse veil piercing under such circumstances.[1]  The court also held that the Coleys were equitably estopped from asserting that Mrs. Coley had any membership interest in the LLCs.  Finally, the court held that DIRECTV's failure to serve process on the LLCs did not prevent the court from exercising jurisdiction over them.  Mr. Coley, Mrs. Coley, and ITT[2] timely appealed.[3]

## II.

As an initial matter, DIRECTV has asked us to dismiss Mrs. Coley's appeal on the grounds that she did not participate in the post-judgment proceedings in the district court and does not qualify as a nonparty entitled to appeal.  Mrs. Coley contends in response

---

[1] Alternatively, the district court concluded that it could employ its inherent sanction power to reach the LLCs' assets.  *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461–62 (4th Cir. 1993).  Because we hold that the court did not err in reverse piercing ITT's veil, we do not reach this issue.

[2] These three appellants filed separate appeals that have been consolidated.  South Raleigh also appealed, but its appeal has been dismissed.

[3] Pursuant to a request by DIRECTV, the district court also ordered the appointment of a receiver, but stayed execution of the order pending appeal.  The appellants dispute in passing the district court's appointment of a receiver.  However, their passing reference is insufficient to preserve the issue for our review because they fail to include reasons and citations as required by our rules.  *See* Fed. R. App. P. 28(a)(8)(A).

that she has established a sufficient legal interest in the judgment to file an appeal. We disagree with Mrs. Coley's position.[4]

We review de novo Mrs. Coley's asserted right to appeal as a nonparty. *See Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 39 (1st Cir. 2000); *see also David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). Generally, nonparties to proceedings in the district court may not appeal from a district court's judgment. *Kenny v. Quigg*, 820 F.2d 665, 667 (4th Cir. 1987); *see also Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (noting that the "better practice" is for nonparty to seek intervention). A limited exception arises if a nonparty has an interest in the litigation and actively participated in the particular stage of district court proceedings that is challenged on appeal. *See Doe v. Pub. Citizen*, 749 F.3d 246, 259–61 (4th Cir. 2014) (explaining that nonparty that did not participate generally nevertheless could appeal because it participated in matters relevant on appeal); *Microsystems*, 226 F.3d at 41 (noting that litigants cannot "evade" party status and later expect to be treated as parties); *Dopp v. HTP Corp.*, 947 F.2d 506, 512 (1st Cir. 1991) (holding that party who secured dismissal prior to judgment could not appeal). This limited exception is particularly applicable when the nonparty is the only person or entity in a position to appeal a given aspect of the district court's judgment. *See Kenny*, 820 F.2d at 668.

---

[4] Mrs. Coley also contends that the court erred in exercising personal jurisdiction over her. Because we grant DIRECTV's motion to dismiss her appeal, we do not address her personal jurisdiction argument.

11

Mrs. Coley testified prior to being dismissed from the case in the pre-judgment proceedings that she had no membership interest in ITT.  She now advances the contrary argument that she holds a 50 percent interest in ITT, but she did not participate in any manner in the post-judgment proceedings at issue in this appeal.[5]  Additionally, we observe that Mr. Coley is in a position to represent on appeal any interest that Mrs. Coley otherwise could assert.  Under these circumstances and in view of the equities of this case, we grant DIRECTV's motion to dismiss Mrs. Coley's appeal.  *See Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) (holding that nonparty can only appeal when it participated in proceedings and equities favor the appeal).

## III.

### A.

Mr. Coley and ITT (the defendants) contend that the district court erred in reverse piercing ITT's corporate veil.  They primarily assert: (1) that Delaware law does not permit reverse piercing of a corporate veil, even when the corporation is an alter ego of the judgment debtor; and (2) that Delaware's "LLC charging statute," 6 Del. Code § 18-703, provides the exclusive remedy for a judgment creditor seeking access to the financial interest of an LLC's member.

In response, DIRECTV argues that the district court correctly predicted that Delaware law would permit reverse veil piercing under these factual circumstances, and

---

[5] The parties have not appealed the underlying judgment, in which Mrs. Coley did participate.

that the Delaware LLC charging statute does not limit the ability of a judgment creditor to reverse pierce the corporate veil of an LLC that is the alter ego of a judgment debtor. We agree with DIRECTV's position.

We review de novo the question whether Delaware state law would recognize reverse piercing of the corporate veil of an LLC. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 239 (1991); *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996). A corporation is a fictional legal entity separate from its shareholders. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976). The corporate form generally insulates shareholders from personal liability for the corporation's debts, because those debts are not imputed to the shareholders. *See generally id.* Like a corporation, an LLC also generally protects its "members" from personal liability for the LLC's debts. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008).

Nevertheless, courts have disregarded the legal distinction between a business entity and the individuals who hold ownership interests in that entity, if maintaining the distinction would "produce injustices or inequitable consequences." *DeWitt*, 540 F.2d at 683 (citation omitted). In such circumstances, a court may "pierce the veil" separating the entity and its constituent members and treat the entity and its members as identical. *See id.* Importantly, similar circumstances warrant piercing the veil of both corporations and LLCs. *NetJets*, 537 F.3d at 176.

Traditional veil piercing permits a court to render an individual liable in a judgment against a business entity in which the individual has an interest, when the entity

13

"is in fact a mere instrumentality or alter ego of [the individual]." *Id.* (citing *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)); 1 W. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41 (2017) [1 *Fletcher*] (observing that traditional piercing of an entity's corporate veil results in "liability [being] imposed upon its members"). Conversely, reverse veil piercing attaches liability to the *entity* for a judgment against the individuals who hold an ownership interest in that entity. *See C.F. Tr., Inc. v. First Flight, L.P.*, 306 F.3d 126, 134 (4th Cir. 2002) (explaining that reverse piercing renders the entity liable for debts of a member); *see also Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 244 (5th Cir. 1990) (noting that courts can reverse pierce a corporation's veil based on a finding of alter ego).

Reverse piercing is classified into two types, namely, insider reverse piercing and outsider reverse piercing. *See* 1 *Fletcher*, *supra*, § 41.70. "Insider" reverse piercing applies when "the controlling [member or shareholder] urges the court to disregard the corporate entity that otherwise separates the [member or shareholder] from the corporation." 1 James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 7:18 [Cox & Hazen] (3d ed. 2017). However, many courts strongly oppose allowing a company's veil to be pierced for the benefit of the individuals who themselves have created the company.[6] *Id.*; 2 F. Hodge O'Neal & Robert B. Thompson, *Close Corporations and LLCs: Law and Practice* § 8:18 [O'Neal & Thompson] (Rev. 3d

---

[6] Because insider reverse piercing is not at issue in this case, we express no opinion on the propriety of that theory under Delaware law.

14

ed.) ("[C]ourts rarely permit a corporation to be disregarded for the benefit of its own shareholders.").

"Outsider" reverse piercing, the type relevant here, applies when an outside third party, frequently a creditor, urges a court to render a company liable in a judgment against its member. *First Flight*, 306 F.3d at 134 ("Outsider reverse veil-piercing extends [the] traditional veil-piercing doctrine to permit a third-party creditor to 'pierce[ ] the veil' to satisfy the debts of an *individual* out of the corporation's assets." (citation omitted and second alteration in original)). Many courts have allowed outsider reverse piercing in actions by creditors, Cox & Hazen, *supra*, § 7:18, because outsider reverse piercing "follows logically the premises of traditional veil piercing," O'Neal & Thompson, *supra*, § 8:18. The states that have barred outsider reverse piercing have done so "in large part because of the potential harm to innocent shareholders [or members]."[7]  Cox & Hazen, *supra*, § 7:18.

The law of the state in which an entity is incorporated generally governs the question whether a court may pierce an entity's veil. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1336 (Fed. Cir. 2013) (applying law of state of incorporation to reverse piercing claim). Accordingly, we apply Delaware law to this

---

[7] Many other states have recognized the remedy of reverse piercing in certain circumstances. *See First Flight*, 306 F.3d at 135 (collecting cases from various jurisdictions).

15

question.[8]   Because no Delaware court to date has recognized reverse veil piercing, *Crystallex Int'l Corp. v. Petroleos de Venezuela, S.A.*, 213 F. Supp. 3d 683, 690 n.7 (D. Del. 2016), *rev'd on other grounds*, 879 F.3d 79 (3d Cir. 2018), our task is to predict whether Delaware would recognize such a remedy under the circumstances presented here.  *See Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016) (explaining that we may predict state law when an issue is not settled); *see also United States v. Badger*, 818 F.3d 563, 568, 571 (10th Cir. 2016) (predicting that Utah would permit reverse piercing).

Delaware courts have recognized traditional veil piercing as an equitable remedy, but have cautioned that the remedy is appropriate only in exceptional circumstances. *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task." (citation omitted)).  The Delaware Supreme Court has stated that the corporate form may be disregarded "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved."  *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968).  In Delaware, the alter ego theory is a general principle of corporate law according to which a court may pierce a company's veil if separate entities "operate[ ] as a single economic entity such that it would be inequitable for [the] Court to uphold a legal distinction between them."  *NetJets*, 537 F.3d at 177 (citation omitted).

---

[8] The parties do not dispute that Delaware law applies to the reverse piercing analysis.

16

Although there are obvious differences between piercing an entity's veil to render

an individual liable, and piercing the veil to render a company liable, we have explained

that in many jurisdictions "the same considerations that justify [traditional] piercing [of]

the corporate veil may justify piercing the veil in 'reverse.'" *First Flight*, 306 F.3d at 135

(citing 1 *Fletcher*, *supra*, § 41.70). *But see Cancan Dev., LLC v. Manno*, No. CV 6429-

VCL, 2015 WL 3400789, at \*22 (Del. Ch. May 27, 2015) (observing that reverse

piercing may require different analysis). Notably, in Delaware, disregarding the

corporate fiction "*can always be done* if necessary to prevent fraud or chicanery," a

principle that would support both traditional and reverse veil piercing. *See Adams v.

Clearance Corp.*, 121 A.2d 302, 308 (Del. 1956) (emphasis added) (noting that

disregarding corporate form can be appropriate but not addressing veil piercing directly).

Just as traditional veil piercing permits a court to hold a member liable for a company's

actions, reverse veil piercing permits a court to hold a company liable for a member's

actions if recognizing the corporate form would cause fraud or similar injustice. *See

Pauley*, 239 A.2d at 633; *Harco Nat'l Ins. Co. v. Green Farms. Inc.*, No. CIV. A. 1131,

1989 WL 110537, at \*4 (Del. Ch. Sept. 19, 1989) (observing that *Pauley* applied directly

to corporate veil piercing).

Reverse veil piercing is particularly appropriate when an LLC has a single

member, because this circumstance alleviates any concern regarding the effect of veil

piercing on other members who may have an interest in the assets of an LLC. *See* 1

*Fletcher*, *supra*, § 41.70 (noting that "potential harm" to other members "must be

considered"). Therefore, when an entity and its sole member are alter egos, the rationale

17

supporting reverse veil piercing is especially strong. And because Delaware courts apply the alter ego theory only in exceptional circumstances, recognition of reverse veil piercing for the limited purpose of preventing fraudulent conduct would not threaten the general viability of the corporate form in Delaware. *See Wallace*, 752 A.2d at 1183.

We also observe that "Delaware has a powerful interest of its own in preventing the entities that it charters from being used as vehicles for fraud. Delaware's legitimacy as a chartering jurisdiction depends on it." *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 26 (Del. Ch. 2009). Were Delaware to permit courts to hold an alter ego member liable for an entity's debts *without also* allowing courts to hold the alter ego entity liable for the member's debts, fraudulent members could hide assets in plain sight to avoid paying a judgment. Delaware law is clear, however, that a corporate form cannot be used as a "shield" to hinder creditors from collecting on adjudicated claims. *See Martin v. D.B. Martin Co.*, 88 A. 612, 614, 619 (Del. Ch. 1913); *see also First Flight*, 306 F.3d at 135 (noting that corporate form should not be used to "shelter" assets "from lawful claims of judgment creditors" (citation omitted)).

And finally, Delaware courts have signaled some willingness to apply a theory of reverse veil piercing. In *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, the Court of Chancery of Delaware noted that "where [a] subsidiary is a mere alter ego of the parent to the extent that the Court may engage in 'reverse veil-piercing,' the Court may treat the

18

assets of the subsidiary as those of the parent" for certain purposes.[9]  No. CV 7994-VCN, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016).  And, in another decision, the Delaware Chancery Court observed that a claim of traditional veil piercing "might have prevailed" had it been presented properly as a claim of reverse veil piercing.  *Cancan*, 2015 WL 3400789, at *22.  Given this present status of Delaware law regarding the issue before us, we conclude that Delaware would recognize outsider reverse piercing of an LLC's veil when the LLC is the alter ego of its sole member.

Our conclusion is not altered by the defendants' contention that Delaware's LLC charging statute, 6 Del. Code § 18-703, is the exclusive remedy for a judgment creditor seeking access to the assets of an LLC's member.  The LLC charging statute provides, in part, that "[o]n application by a judgment creditor . . . a court having jurisdiction may charge the limited liability company interest of the judgment debtor to satisfy the judgment," but only for "distributions" to which the debtor would otherwise be entitled. 6 Del. Code § 18-703(a).  The LLC charging statute also has an "exclusivity" clause that states:

> The entry of a charging order is the exclusive remedy by which a judgment creditor of a member or a member's assignee may satisfy a judgment out of the judgment debtor's limited liability company interest and attachment, garnishment, foreclosure or other legal or equitable remedies are not

---

[9] Although Delaware does not have an intermediate appellate court, the Court of Chancery of Delaware plays a significant role in the development of corporate law in Delaware.  Adam D. Feldman, *A Divided Court in More Ways Than One: The Supreme Court of Delaware and Its Distinctive Model for Judicial Efficacy, 1997-2003*, 67 Alb. L. Rev. 849, 854 n.31 (2004).

available to the judgment creditor, whether the limited liability company has 1 member or more than 1 member.

6 Del. Code § 18-703(d).

Although neither the Delaware Supreme Court nor the Delaware Chancery Court has interpreted this exclusivity provision in Section 18-703, we think that it is clear that piercing the veil of an alter ego is not the type of remedy that the provision was designed to prohibit. The rule of statutory construction known as "*ejusdem generis*" instructs that, when general words follow the enumeration of specific items in a list, the general words apply "only to other items akin to those specifically enumerated." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980); *see In re IAC/InterActive Corp.*, 948 A.2d 471, 495–96 (Del. Ch. 2008). Thus, the general phrase "or other legal or equitable remedies," which follows the three enumerated remedies in the exclusivity provision, refers to similar types of remedies as those specifically listed. The remedies specifically enumerated in the exclusivity provision, "attachment, garnishment, [and] foreclosure," involve traditional common law actions by which a creditor may seize particular property of a debtor. *See, e.g.*, *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 541 (1994) (explaining that foreclosure is a remedy pertaining to debtor's interest in specific property); *N. Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 610 (1975) (Powell, J., concurring in the judgment) ("Garnishment and attachment remedies afford the . . . judgment creditor a means of assuring . . . that the debtor will not remove from the jurisdiction, encumber, or otherwise dispose of certain assets . . . ."); *Sniadach v. Family Fin. Corp. of Bay View*,

20

395 U.S. 337, 340 (1969) (assuming that "attachments in general" apply to "specialized type[s] of property," including the attachment of wages).

Reverse veil piercing under the alter ego theory, however, involves seeking assets of a debtor through a challenge to the legitimacy of an LLC or a corporation. Thus, when an LLC is determined to be the alter ego of its sole member, this finding permits a court to treat the LLC as "identical" to its member, such that the court regards "the ultimate party in interest . . . in law and fact as the *sole party* in a particular transaction." *See Pauley*, 239 A.2d at 633 (emphasis added); *see also DeWitt*, 540 F.2d at 683. In such circumstances, "the separateness of the [LLC] has ceased." 1 *Fletcher*, *supra*, § 41.10. Accordingly, because piercing the veil of an LLC effectively eliminates the legal status of the LLC in very narrow circumstances in which fraud or other injustice has been established, that remedy is unlike the various common law seizure remedies listed in the exclusivity provision of the Delaware LLC charging statute.

Moreover, an interpretation of the LLC charging statute that would prevent courts' ability to reverse pierce an LLC's veil would contradict Delaware courts' traditional "power . . . to look through these legal fictions . . . and see by whom and through what agencies the wrong is done and on whom the loss ultimately falls." *Martin*, 88 A. at 615. Such an outcome impermissibly would limit Delaware's ability to "prevent[ ] the entities that it charters from being used as vehicles for fraud," and would allow solvent debtors to engage in fraud by using the LLC form solely to avoid liability for their debts. *NACCO*, 997 A.2d at 26. Delaware courts are empowered to disregard the corporate form to prevent such "chicanery." *Adams*, 121 A.2d at 309.

21

Accordingly, we conclude that Delaware's LLC charging statute does not prevent a court from reverse piercing the veil of an LLC that serves only as an alter ego of its sole member, because such an LLC is a "sham entity." *See Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). The district court therefore correctly held that under Delaware law, outsider reverse piercing of an LLC is warranted to render an LLC a co-judgment debtor when the LLC is the alter ego of its sole member.[10]

## B.

Mr. Coley next argues that the district court erred in concluding that ITT was his alter ego. He contends that such a conclusion required the court to find that ITT had a fraudulent purpose. Mr. Coley asserts that because the court failed to make a finding of fraudulent purpose, the court erred in reverse piercing ITT's veil. We disagree with Mr. Coley's argument.

Because a court's conclusion that an LLC is an alter ego of its member "depends largely on the resolution of questions of fact," we will uphold that determination if it is not clearly erroneous. *In re Cty. Green Ltd. P'ship*, 604 F.2d 289, 292 (4th Cir. 1979). In Delaware, to prevail under an alter ego theory, a plaintiff is not required to show "actual fraud but must show a mingling of the operations of the entity and its owner plus an 'overall element of injustice or unfairness.'" *NetJets*, 537 F.3d at 176 (quoting *Harco*, 1989 WL 110537, at *5); *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 989 (Del. Ch. 1987) (explaining that the test for disregarding corporate form "cannot be

---

[10] Because we hold that Delaware law permits reverse piercing, we deny as moot Mr. Coley's motion for certification of certain questions to the Delaware Supreme Court.

reduced to a single formula"); *Martin*, 88 A. at 615 (observing that when disregarding corporate form, there was no requirement that corporation was "originally intended to perpetrate a fraud").

If legally separate entities fail to follow corporate formalities when doing business with one another, this failure may raise an inference that the entities are one and the same.[11]  *See NetJets*, 537 F.3d at 178.  Additionally, piercing an entity's veil under the alter ego theory is particularly appropriate when a single individual or entity completely dominates and controls another entity.  *Wallace*, 752 A.2d at 1183–84.

Here, the district court found that ITT, East Coast, and South Raleigh were Mr. Coley's alter egos because they "operate as a single economic entity in which money flows freely between them at [Mr.] Coley's whim."  The court further found significant evidence of "[Mr.] Coley's failure to observe corporate formalities, an utter lack of proper accounting records, and extensive commingling of assets."  We conclude that the district court did not clearly err in its alter ego finding.

We reject Mr. Coley's contention that an alter ego must have been created with an expressly fraudulent purpose.  *See NetJets*, 537 F.3d at 177 (noting that there is no requirement that an alter ego was "originally intended to perpetrate a fraud" (citing

---

[11] LLCs must observe fewer *internal* formalities than corporations, but the principle that they should follow ordinary formalities and norms when doing business with other entities is the same. *NetJets*, 537 F.3d at 178.

23

*Martin*, 88 A. at 615)).   Instead, it is enough that the entity was used to cause fraud or injustice.[12]  *See id.* at 176–77; *Pauley*, 239 A.2d at 633; *Harco*, 1989 WL 110537, at \*5.

The evidence that Mr. Coley and his LLCs are alter egos is substantial.  Mr. Coley clearly controls ITT and, on multiple occasions, testified pre-judgment that he is ITT's sole member.  Mrs. Coley separately testified that she had no ownership interest in any of Mr. Coley's business entities and was not a member of ITT.[13]  Mr. Coley also produced an operating agreement during pre-judgment discovery listing himself as ITT's only member, and testified that he is the only one who "get[s] a check" from his LLCs.

There is also abundant evidence in the record that Mr. Coley and his LLCs commingled their funds.  Mr. Coley failed to keep complete records of how and why funds were deposited from one LLC's account into another LLC's account, or into his personal accounts.  Checks made out to "East Coast Sales" were sometimes deposited into Mr. Coley's personal account.  However, Mr. Coley also received income directly from East Coast.  Mr. Coley even reported East Coast's profit and loss on his individual tax return.  Yet, in his deposition testimony, Mr. Coley could not explain the amounts that he received from his LLCs as salary and other income.  For example, he stated as follows:

> Q: Well, I'm trying to understand, Mr. Coley, what do you exactly buy with your own money.  Because as far as I can tell, you've got at least $130,000 flowing into your and [Mrs. Coley's] account, your tax return from 2014

---

[12] We express no view whether ITT was created for a fraudulent purpose.

[13] Because we affirm below the district court's decision to estop Mrs. Coley from asserting an interest in ITT, we do not address Mrs. Coley's alleged interest in ITT here.

reports business income of $66,000 and a bunch of losses. And so I'm trying to understand how that all fits together. Can you explain it to me?

A: No. I don't know how—I don't—I can't explain this here. I can't explain that.

Funds also were transferred freely among the LLCs. For example, South Raleigh and East Coast collected the rental revenue on properties owned by ITT, but South Raleigh and East Coast then transferred that revenue, less their expenses, to ITT as profit. Mr. Coley failed to explain why the revenue did not go directly to ITT, the owner of the properties. And when asked why certain transfers of funds also were made *from* ITT to one of the other LLCs, Mr. Coley had no explanation.

Mr. Coley also testified that payments for ITT's "major expenses" frequently were transferred from another LLC to ITT. He stated that these expenses included "major thing[s] like taxes, insurance, taxes, we make sure it's all paid out of [ITT]." Other expenses, however, were paid by another LLC, without passing through ITT. For example, Mr. Coley speculated that certain checks written from the South Raleigh account might have been used to pay "HOA fees" on the properties owned by ITT. Yet, he stated confusingly that those checks "are paid to South Raleigh Air. [But t]hey are [ITT's] money." Still other funds from Mr. Coley's LLCs were used to pay loans on two vehicles for which Mr. Coley personally was the borrower.

Finally, the LLCs also made payments on mortgages for properties owned by ITT. Mr. Coley testified that on one such property, East Coast made payments on the mortgage loan, but that he and his wife were the borrowers. South Raleigh also made mortgage payments on a separate property owned by ITT, for which Mr. and Mrs. Coley were the

25

borrowers. Moreover, even the mortgage on Mr. Coley's personal residence was paid by one of his LLCs. Nevertheless, Mr. Coley took the mortgage interest deduction on such properties on his *personal* tax return. This cumulative evidence strongly indicates that Mr. Coley and his LLCs were in fact a single economic entity, *NetJets*, 537 F.3d at 176, utterly dominated and controlled by Mr. Coley, *Wallace*, 752 A.2d at 1183. We also conclude that an "overall element of injustice or unfairness" is present in this case, because DIRECTV has not received any payment on its judgment against Mr. Coley although the district court found Mr. Coley liable over four years ago. *See NetJets*, 537 F.3d at 176. We therefore hold that the district court's finding that ITT and Mr. Coley are alter egos was not clearly erroneous.

C.

The defendants next argue that the district court erred in holding that Mr. Coley's participation in the post-judgment proceedings permitted the court to exercise jurisdiction over ITT, despite the fact that ITT was not served with process. DIRECTV argues in response that because the court had jurisdiction over ITT's alter ego, Mr. Coley, the court necessarily had jurisdiction over ITT. Again, we agree with DIRECTV.

We review de novo a court's determination of its personal jurisdiction over a nonparty. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). Typically, service of process is a precondition to a court's exercise of personal jurisdiction over a defendant. *See Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135–36 (4th Cir. 1984). However, when a court has engaged in traditional veil piercing, the court may exercise personal jurisdiction vicariously over an individual if the court has

26

jurisdiction over the individual's alter ego company. *See Newport News Holdings Corp. v. Virtual City Vision*, *Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) (observing that courts have "consistently acknowledged that it is compatible with due process to exercise personal jurisdiction over an individual . . . who is an alter ego" (citation omitted)); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1072–73 (9th Cir. 2015) (noting that alter ego test "may be used to extend personal jurisdiction"). Moreover, a court may exercise jurisdiction over an entity if its alter ego "participated fully in the proceedings [below] and therefore waived any objections to lack of service of process." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (citation omitted).

Fundamentally, the jurisdictional inquiry concerns whether a particular party is before the court. *See, e.g.*, *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (observing that personal jurisdiction involves court's authority over a particular defendant); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 95–96 (4th Cir. 1988) (noting that jurisdiction involves question of "proper parties"). When a company is an alter ego of its sole member, the alter ego and the member are effectively the same entity. *Pauley*, 239 A.2d at 633. Accordingly, "the jurisdictional contacts of [the individual] *are* the jurisdictional contacts of the [alter ego entity]." *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (citation omitted); *see also Ranza*, 793 F.3d at 1072–73. Moreover, when reverse veil piercing of a single-member LLC is involved, the individual already is properly before the court. Thus, there is no concern that the alter ego LLC controlled by that individual must somehow receive independent notice of a legal action. *Cf.* Restatement (Second) of

27

Judgments § 59(5) (Am. Law Inst. 1982) (observing that, in traditional piercing context, notice to alter ego individual is appropriate). We therefore conclude that an LLC that is the alter ego of its sole member is properly before the court when the court has jurisdiction over that member. *See Ranza*, 793 F.3d at 1072–73.

Here, the defendants do not contend that the court erred in exercising personal jurisdiction over Mr. Coley, ITT's sole member, who participated fully in the district court proceedings. *See Carefirst of Md., Inc. v. CareFirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (explaining that personal jurisdiction is proper when the defendant directed business activities at the forum state); *Transfield*, 571 F.3d at 224. Accordingly, applying the principles set forth above, we hold that the court did not err in exercising jurisdiction over ITT.

IV.

Finally, we find no merit in the defendants' argument that the district court erred in holding that the Coleys were equitably estopped from asserting any membership interest in ITT during the post-judgment proceedings. We review the district court's decision applying equitable estoppel for abuse of discretion. *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006).

Equitable estoppel is a doctrine that is intended to protect litigants from "unscrupulous opponents who induce a litigant's reliance" and "then reverse themselves to argue that they win under the opposite scenario." *See Teledyne Indus., Inc., v. NLRB*, 911 F.2d 1214, 1220 (6th Cir. 1990) (citation omitted); *In re Varat Enters., Inc.*, 81 F.3d

28

1310, 1317 (4th Cir. 1996) (explaining that estoppel rule is designed to protect party that may be prejudiced by an opponent's change of position). A party may invoke equitable estoppel by showing that (1) an adversary made a representation, (2) upon which the party relied, (3) that was contradicted by the adversary's later representation, (4) to the party's detriment. *Zoroastrian Ctr. & Darb-E-Mehr of Metro. D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 753 (4th Cir. 2016); *Teledyne*, 911 F.2d at 1220.

In the pre-judgment proceedings, Mrs. Coley represented that she had no ownership interest in any of Mr. Coley's business entities and was not a member of ITT. Mr. Coley also testified that he was the sole member of ITT, and that his wife had no membership interest in ITT. He even produced an operating agreement for ITT in 2012 indicating that he was the sole member. DIRECTV relied on the Coleys' representations in dismissing its claims against Mrs. Coley.[14]

In direct contrast to his prior position, Mr. Coley asserted during the post-judgment proceedings that Mrs. Coley has been a member of ITT since "day one." Mrs. Coley herself sought a declaration in North Carolina state court that she had a 50 percent interest in ITT. Under these circumstances, DIRECTV would have suffered prejudice if the district court had accepted the Coleys' new position, which was a complete

---

[14] The defendants contend that DIRECTV should not have relied on Mrs. Coley's representations, because DIRECTV had questioned her veracity. Their contention is unavailing, however, because what is relevant is that the Coleys made material representations upon which DIRECTV relied, not whether one party deceived the other. *See U.S. ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of N.Y.*, 402 F.2d 893, 898 (4th Cir. 1968). Moreover, we conclude that it was plainly reasonable for DIRECTV to rely on Mr. and Mrs. Coley's consistent testimony that she had no interest in ITT.

29

repudiation of their earlier sworn statements during the pre-judgment litigation. The Coleys' shifting positions reflected an attempt to assert whatever position would advance their quest to avoid liability and to place their personal assets beyond the reach of DIRECTV. Accordingly, we hold that the district court did not abuse its discretion in estopping the assertion of Mrs. Coley's alleged interest in ITT in the post-judgment proceedings.[15]

## V.

For these reasons, we affirm the district court's decision to reverse pierce the veil of ITT, rendering ITT a co-debtor in the judgment against Mr. Coley. We also affirm the district court's decision to estop Mr. Coley from asserting that Mrs. Coley has a membership interest in ITT, and we grant DIRECTV's motion to dismiss Mrs. Coley's appeal.

*AFFIRMED*

---

[15] Having decided the issues presented on appeal, we deny as moot DIRECTV's motion to remand to allow the district court to clarify the scope of its judgment.